Arthur Vernon **WATSON**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 251.

Supreme Court of Alaska.

Dec. 2, 1963.

Joseph P. Josephson, Anchorage, for appellant.

James C. Merbs, Dist. Atty., and Dorothy Awes Haaland, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBITT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

A jury found Watson guilty of second degree murder. His principal contention on this appeal is that reversible error was committed by the admission of certain incompetent and prejudicial testimony.

The decedent, Marion Grissom, an acquaintance of Watson and his wife, was a visitor in their home during the late afternoon of December 18, 1961. There was evidence that the parties were drinking alcoholic beverages. Watson testified that at about 6:00 p. m. he left his wife and Grissom at his home while he went to have his truck fixed. When he returned at about 8:00 p. m., he discovered his wife lying on the floor with her face bloody. As he leaned down to pick her up Grissom assaulted him. The two men struggled until Watson was able to get a knife from the kitchen drainboard. Using the knife as a weapon he managed to get Grissom to start to leave the house. When Grissom started to walk away, Watson put the knife down and went to look after his wife. He heard a noise, turned around and saw Grissom returning from the front door. Watson picked up a rifle, levered a cartridge into the chamber, pointed the rifle at Grissom and told him to get out. Grissom continued to advance and Watson shot and killed him. He then notified the police.

At the trial Mrs. Watson testified that she remembered Grissom and her husband being at the house at the time her husband left to get his truck fixed, but that she had no recollection of anything else that took place until a doctor arrived some time after the shooting. A state police officer testified that Mrs. Watson was in bed when he arrived at the scene. Approximately two hours later, near the end of the police investigation, she came into the living room, saw blood on the floor and asked what it was. When told that it was blood, she asked, "From what?" She was informed that her husband had shot Grissom.

The police officer testified that she then exclaimed, "Oh, no", and turning to her husband said, "It's your temper, your temper has done it again." Another police officer also testified to essentially the same thing.

Watson contends that it was error to admit the police officers' testimony regarding Mrs. Watson's statement because it was hearsay evidence.[1] The state argues that the statement Mrs. Watson is reported to have made was part of the res gestae and therefore admissible as an exception to the hearsay rule.

■ The Latin phrase "res gestae" means literally "things done" or "the transactions". It is frequently applied to spontaneous statements made contemporaneously with or immediately after an unusual event by a person who is under the influence of the excitement or shock caused by witnessing or participating in the event. Such spontaneous statements are admissible in evidence and form one of the important exceptions to the hearsay rule.[2]

In order for a spontaneous statement to be admissible under this exception to the hearsay rule it must appear that the person who made the statement perceived the event which the statement explains or describes. The statement must be the spontaneous result of an occurrence operating upon the perceptive senses of the speaker, rather than the result of inference or surmise.[3]

■ Mrs. Watson's statement, as it would be generally understood, purported to explain the shooting—that it had oc-

curred because Watson had lost his temper. But there is no evidence from which it could be inferred that Mrs. Watson heard or saw what took place. She said that she had no recollection of the event, and when she was informed by the police two or three hours after the shooting that her husband had shot Grissom, her reaction was that of one who had no previous knowledge of what had occurred. Since evidence was lacking from which the essential element of perception could be inferred, evidence of Mrs. Watson's statement regarding her husband's temper did not come within the res gestae exception to the hearsay rule, and the admission of such evidence was error.

■ The state argues that Mrs. Watson's statement regarding her husband's temper was admissible because there was no evidence that he made any reply. Here the state invokes the rule that when an accused is silent in the face of an accusatory or inculpatory statement, both the statement and the accused's failure to deny its truth are admissible in a criminal action as evidence of acquiescence by the accused in the truth of the statement or as indicative of a consciousness of guilt.[4]

We limit the application of this rule. It will come into play only when the circumstances are such that the accused's silence makes it more probable than not that he knew or believed the statement to be true. The rule is not applicable in circumstances where a reply is not called for, or where silence is equally consistent with a state of mind other than acquiescence in the truth of what was said.[5]

1. Hearsay evidence, subject to various exceptions, is incompetent and inadmissible. Jefferson v. City of Anchorage, 374 P.2d 241, 242–243 (Alaska 1962).

2. United States v. Edmonds, 63 F.Supp. 968, 971 (D.C.Cir. 1946); Keefe v. State, 50 Ariz. 293, 72 P.2d 425, 427 (1937); VI Wigmore, Evidence §§ 1745–1747 (3d ed. 1940).

3. Commonwealth v. Fugmann, 330 Pa. 4, 198 A. 99, 105–106 (1938); People v.Poland, 22 Ill.2d 175, 174 N.E.2d 804, 808

(1961); VI Wigmore, Evidence § 1751, at 155 (3d ed. 1940); Annot., 127 A.L.R. 1030 (1940).

4. People v. Simmons, 28 Cal.2d 699, 172 P.2d 18, 25 (1946); State v. Redwine, 23 Wash.2d 467, 161 P.2d 205, 206 (1945), rev'd on other grounds, State v. Robinson, 24 Wash.2d 909, 167 P.2d 986 (1946). Annots., 80 A.L.R. 1235 (1932), 115 A.L.R. 1510 (1938).

5. See State v. Kobylarz, 44 N.J.Super. 250, 130 A.2d 80, 81, 84–85 (1957); IV Wig-

■ The circumstances in this case do not call for application of the rule of admission by silence. It is true, as the state points out, that there was no evidence that Watson made any reply to his wife's statement. But there is also no evidence that he did not make any reply. A police officer testified only that Mrs. Watson "turned" to her husband as she made the statement regarding his temper. He did not describe Watson's reaction to the statement, whatever it may have been. Nor was there any other evidence from which it could be determined whether Watson said anything or reacted in some other manner to the words spoken by his wife. In order for the state to count upon Mrs. Watson's statement as admissible evidence, it was necessary for the state to have established the essential element of silence on Watson's part.[6] This it failed to do. Her statement was therefore not competent evidence on the basis of any implied admission on Watson's part of the truth of what she said.

■ Assuming, however, that there was proof of silence on Watson's part in the face of the statement made by his wife, the circumstances do not justify using her words and Watson's failure to deny or reply to them as evidence of his acquiescence in their truth. Watson had admittedly shot and killed a man, and at the time his wife spoke he had been under police interrogation for approximately two hours. He had explained in detail to the police officers the circumstances of his fight with Grissom and his claim that he was finally obliged to shoot Grissom in self-defense. When following this his wife made the statement "It's your temper, your temper has done it again", Watson's failure to comment is entirely consistent with an understandable weariness and a reluctance to explain once again the events that he had already explained to the police, and a reluctance also to engage in a controversy with his wife who at the time was in a state of shock and

not very coherent. In these circumstances, we believe that the failure by Watson to reply to his wife's statement does not give rise to any inference that he thereby impliedly acknowledged that he had shot Grissom in a fit of temper rather than, as he claimed, in self-defense.

The remaining question is whether the error in admitting the statement was prejudicial. We believe it was. A jury would naturally assume that a wife, more than anyone else, would have a special familiarity with her husband's character and temperament. The purport of Mrs. Watson's statement was that she believed that Grissom had been killed because her husband had lost control of his temper. This aspect was emphasized by the district attorney in his argument to the jury. We cannot say with any degree of assurance that this expression of belief, coming from the lips of Watson's wife, did not cause the jury to entertain grave doubts that Watson was speaking the truth when he said that he had shot Grissom in self-defense. There must be a new trial.

Watson contends that other errors took place at the trial. Some involve points which, if disposed of here, may prove helpful on a retrial of the case.

Prejudicial error is claimed in the admission of evidence of a prior incident where Watson allegedly shot at another person. On cross-examination of Morgan, a state police officer, defense counsel brought out the fact that in June 1961, six months before Watson had shot Grissom, Watson had reported an incident where he and Grissom had struggled over a rifle, and that Watson had requested Morgan to tell Grissom to stay away from him and not to trouble him when Grissom was drinking. The purpose of this evidence apparently was to show that Watson was afraid of Grissom when the latter was drinking. On redirect examination by the district attorney Morgan was permitted to testify, over objections by

more, Evidence § 1071, at 70 (3d ed. 1940); McCormick, Evidence § 247 (1954).

6. Anderson v. State, 171 Miss. 41, 156 So. 645, 647 (1934); Arpan v. United States, 260 F.2d 649, 655 (8th Cir. 1958).

the defense, that the occasion of his conversation with Watson in June 1961 was not a result of Watson coming to Morgan to complain about Grissom, but rather was a result of Morgan's investigation of a complaint, made earlier the same day by a man named Wright, to the effect that Watson had taken a shot at Wright. Watson argues that this testimony regarding the Wright shooting incident was inadmissible under a rule which would exclude evidence of an offense unconnected with that with which Watson was charged.

 There was no error in the admission of this testimony. Evidence that reveals the commission of an offense other than that for which the defendant is being tried is inadmissible if it is relevant merely to show criminal disposition. But such evidence is admissible, even when it shows the defendant's prior trouble with the law, when it is relevant to prove some other material fact.[7] The portion of the June 1961 incident brought out by defense counsel's cross-examination of Morgan would naturally have left the jury with the impression that Watson had gone to Morgan to report the altercation he had had with Grissom. This would tend to establish the fact, which Watson was apparently attempting to establish, that he had reason

to be afraid of Grissom. But the picture assumes a different perspective when other facts are revealed. The state had a right to show that Watson had not gone to Morgan motivated by a desire to report his fear of Grissom, but had gone because Morgan wanted to see him regarding the complaint that Wright had made against Watson. This evidence was relevant because it tended to weaken Watson's claim that he was so fearful of Grissom that he took it upon himself to go to a police officer for the purpose of having Grissom warned to stay away from him when he was drinking.

 Watson also argues that Morgan's testimony that Wright had complained to him about the shooting incident was inadmissible because it was hearsay. Evidence of a statement made other than by a witness who is testifying is excluded as hearsay only when it is offered to establish the truth of the fact stated. Where it is offered without reference to its truth, but for some other relevant purpose, then the hearsay rule does not apply.[8] The purpose of showing through Morgan's testimony that Wright had complained to him about Watson was not to establish that Watson had in fact taken a shot at Wright. The purpose was to reveal the occasion for

---

7. People v. Peete, 28 Cal.2d 306, 169 P.2d 924, 929–930 (1946); State v. Scott, 111 Utah 9, 175 P.2d 1016, 1022 (1947). See Rule 311 of the Model Code of Evidence and Rule 55, Uniform Rules of Evidence, which provide respectively as follows:

Rule 311. Other Crimes or Civil Wrongs.

Subject to Rule 306, evidence that a person committed a crime or civil wrong on a specified occasion is inadmissible as tending to prove that he committed a crime or civil wrong on another occasion if, but only if, the evidence is relevant solely as tending to prove his disposition to commit such a crime or civil wrong or to commit crimes or civil wrongs generally.

Rule 55. *Other Crimes or Civil Wrongs.*

Subject to Rule 47 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible

to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed another crime or civil wrong on another specified occasion but, subject to Rules 45 and 48, such evidence is admissible when relevant to prove some other material fact including absence of mistake or accident, motive, opportunity, intent, preparation, plan, knowledge or identity.

8. United States v. Campanaro, 63 F.Supp. 811, 814 (E.D.Pa.1945); VI Wigmore, Evidence § 1766 (3d ed. 1940); McCormick, Evidence § 226, at 460–461 (1954); Rule 63, Uniform Rules of Evidence, which reads: "Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except. * * *"

**294**

Watson talking to Morgan at the time he brought up the subject of his fear of Grissom. The hearsay rule, therefore, is not applicable.

Watson contends that the court erred in refusing to give to the jury the following instruction which he had requested:

> If after considering all the evidence you entertain any reasonable doubt as to whether or not the defendant acted in self-defense or in defense of another (his wife), then you must enter a verdict of not guilty.

The jury was instructed that the state had the burden of proving Watson guilty beyond a reasonable doubt of every essential element of the crime of second degree murder; and that one of the essential elements of this crime was that the shooting and killing was done with malice, which was defined as "any state of mind under which a killing is done without legal justification and without circumstances of extenuation." The jury was also instructed that Watson was seeking to justify his act on the ground that he acted in self-defense and in defense of his wife, that a homicide was justified and not punishable when committed by a person in lawful defense of himself or his wife, and that a person had the right to use such force as appears reasonably necessary to protect himself or his wife from great bodily harm.

Taking the instructions as a whole, the jury was told that if the evidence created a reasonable doubt in their minds as to Watson's guilt in view of his claim of self-defense, he must be acquitted. This in essence is what Watson wished to have the jury told by the instruction he requested, and therefore the failure to give that instruction was not error.

Finally, we do not agree that three photographs of the deceased should not have been placed in evidence, as contended by Watson. There was testimony as to Grissom's size and strength, his position at the time he was shot, and the place where the shooting took place. The pictures of Grissom lying on the floor of Watson's kitchen, showing among other things the exit hole of the bullet on Grissom's body, served to illustrate the testimony and portray the conditions described by the witnesses, and were therefore relevant.[9]

By reason of error committed in admitting hearsay evidence of Mrs. Watson's statement regarding her husband's temper, the judgment is reversed and the case remanded for a new trial.

---

9. McIntyre v. State, 379 P.2d 615, 617 (Alaska 1963).