Charles **THESSEN**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 898.

Supreme Court of Alaska.

May 12, 1969.

Charles R. Tunley, of Ross & Tunley and James K. Singleton, Jr., of Delaney, Wiles, Moore & Hayes, Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, Thomas E. Curran, Jr., Sp. Prosecutor, Douglas Baily, Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

DIMOND, Justice.

Fourteen persons were killed in a fire in the Lane Hotel in Anchorage in September 1966. In a 14 count indictment appellant was charged with first degree murder of those persons while perpetrating arson. He was convicted of 14 counts of manslaughter. He appeals, asserting various points which he claims require a reversal of the judgment of conviction and a new trial.

Appellant's first point has to do with his privilege against self-incrimination and his right to counsel at the time he was interrogated by the police.

In Miranda v. Arizona [1] the United States Supreme Court held that when a person is taken into custody in connection with a criminal matter or is otherwise deprived of his freedom of action in any significant way by the authorities and is subject to police interrogation,[2] the person must be warned prior to any questioning that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed.[3] As to the right to consult with counsel, the Supreme Court said:

> Accordingly we hold that an individual held for interrogation must be clearly in-

formed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today.

> \* \* \* \* \* \*

> In order to fully apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him.[4]

A person may waive his privilege against self-incrimination and his right to counsel by choosing not to remain silent and not to have an attorney present at the time of police interrogation. But where such a waiver is asserted, it must be demonstrated by the state that the waiver was knowingly and intelligently made. In *Miranda* the court said:

> If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.[5]

And then in speaking of the meaning of the privilege against self-incrimination, the court said:

> The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant.

> \* \* \* \* \* \*

> But unless and until such warnings and waiver are demonstrated by the prosecution at trial, *no evidence obtained as*

1. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. *Id.* at 477, 86 S.Ct. 1602, 16 L.Ed.2d at 725.

3. *Id.* at 444, 86 S.Ct. 1602, 16 L.Ed.2d at 706–707.

4. *Id.* at 471, 473, 86 S.Ct. at 1626, 1627, 16 L.Ed.2d at 722, 723.

5. *Id.* at 475, 86 S.Ct. at 1628, 16 L.Ed. 2d at 724.

a result of interrogation can be used against him.[6]

During police interrogation appellant confessed to having started the Lane Hotel fire, and such confession was admitted in evidence and used against him at the trial. Appellant contends that the confession ought to have been suppressed and not used against him because he was not effectively advised of his rights under *Miranda* and did not knowingly and intelligently waive those rights.

Appellant was arrested at approximately 2:10 a. m. on October 10, 1966 for driving while under the influence of intoxicants. He was immediately taken to the city of Anchorage Police Department and booked. Within an hour after his arrest, he was interrogated about trash fires occurring in the Anchorage area. Previous to the interrogation, appellant was fully warned of his rights under *Miranda*. He stated he did not want an attorney because he did not need one. He did not admit setting any fires at this interview. The interview lasted for one and one-half hours.

At 9:10 a. m. on October 10 appellant was arraigned, and after entering a plea of guilty, was sentenced to five days in jail for the offense of driving while under the influence of intoxicating liquor. At 1:40 p. m. on October 10 he was interrogated again about the trash fires. Again appellant was fully warned of his rights under *Miranda* prior to the interrogation and he signed a "Waiver of Constitutional Rights" form in which he acknowledged that he had been advised of his rights under the require-

ments of *Miranda*. The second interview lasted about two hours and appellant orally admitted setting nine or ten trash fires.

At 9:00 a. m. on October 11 appellant was again interrogated for about one and one-half hours. Before the interview he was again warned of his rights under *Miranda*. Then he dictated a written statement in which he admitted starting 10 fires. At 6:30 p. m. on October 11 appellant was interviewed for two hours. He was asked if he was still aware of his rights. He said he was and consented to be interviewed. Appellant then orally admitted starting the Lane Hotel fire.

At 9:00 a. m. on October 12 appellant dictated a written confession in which he admitted having started the Lane Hotel fire. Prior to this confession he was again fully warned of his rights under *Miranda*. At 3:45 p. m. on October 12 appellant was arraigned on two separate indictments charging 14 counts of felony murder by arson and 10 counts of second degree arson.

At the hearing of appellant's motion to suppress his confession, appellant testified that he had drunk 20 to 30 shots of whiskey and had taken 10 to 15 Dexamyl capsules during the 12 hours prior to his arrest at 2:10 a. m. on October 10, 1966. He stated that he was so drunk that he could not remember much of what took place and that he could have said anything that night. He also testified that at the time of the second interrogation, at 1:40 p. m. on October 10, he was still in a "daze" and did not recall the questions or signing any waiver of constitutional rights.[7] Appellant argues that

---

6. *Id.* at 476, 479, 86 S.Ct. at 1629, 1630, 16 L.Ed.2d at 725, 726.

7. The document referred to, entitled "Waiver of Constitutional Rights" which appellant admitted contained his signature, reads as follows:

I, Charles Thessen, have been advised of the following rights:

1. That I have the right to be represented by an attorney at any time during this interview or before the interview starts. I have been advised that I may use a telephone for the purpose of calling an attorney or

friend. I have been further advised that I may stop the interview at any time I so desire by refusing to talk further.

I have been advised that the Court has the power to appoint an attorney for me if I am unable to pay for that service. However, I understand that the Court can appoint an attorney only if I am charged with a crime that is punishable by imprisonment for more than one year.

2. That I do not have to make any statement and that it is my right to remain silent.

because of his physical condition on October 10, resulting from the consumption of alcohol and drugs, he could not have validly waived his privilege against self-incrimination and his right to retained or appointed counsel.

■ It is entirely possible that one could be so intoxicated or under the influence of drugs that he could not knowingly and intelligently waive his constitutional rights.[8] Whether this is so depends upon the facts of each particular case.

The first interrogation took place at about 3:00 a. m. on October 10, 1966, less than one hour after appellant had been arrested for driving while under the influence of intoxicating liquor. A police officer testified that just prior to the arrest he observed appellant drive his car up on a curb. When the officer asked appellant to step out of the car, the officer observed that appellant had a difficult time getting his feet to the pavement and that there was a waiver in his balance. The officer smelled the odor of liquor on appellant's breath. When asked to stand on one leg holding the other foot in front of him, appellant was not successful in maintaining his balance. In addition to this evidence, there was appellant's testimony, which we have already referred to, that he was so drunk and in such a daze that he did not know what was taking place at both the first interrogation at 3:00 a. m. on October 10 and at the second interrogation at 1:40 p. m. on the same day.

On the other hand, there was evidence indicating that appellant was in command of his faculties and knew what he was doing. Officer Lancaster, who interrogated appellant at approximately 3:00 a. m. on October 10, testified that appellant had been drinking, but that

I wouldn't consider him intoxicated. Uh, he was responding well to questions and, ah, he might have been a little more talkative, possibly. But * * * he was clear, clear headed.

Dr. Nicholas testified that it would take 12 hours after appellant had stopped drinking and taking the pills for him to be free of their influence. He further testified that it would not be unusual to find a person who reported having taken such doses of alcohol and Dexamyl pills within this limited period of time to either have convulsions or be in an extremely depressed mood. No one testified that this was appellant's condition at the time of his interrogation by the police following his arrest on October 10. A psychologist, James Jefferies, who was familiar with the drug Dexamyl and who had had extensive experience with persons who had drunk to excess, testified that appellant showed no signs of having taken 25 to 30 shots of whiskey and 15 Dexamyl pills without eating when Jefferies interviewed appellant about 36 hours after his arrest.

■ The trial judge found that when appellant was interrogated on October 10 he had well recovered from any drug or alcoholic influence he might have been under earlier that day. Implicit in the judge's findings is the determination that appellant knew what he was doing when he allowed himself to be interrogated without claiming his privilege against self-incrimination and the right to have present retained or appointed counsel—that appellant had knowingly and intelligently waived those rights.[9] We cannot say that the judge was wrong in making this determination. Since he heard and observed the demeanor of the witnesses before him, it was his responsibility to judge of the witnesses' credibility. He had the right to believe the testimony

3. That any statements that I do make during this interview can and will be used against me in Court.

8. In Logner v. North Carolina, 260 F. Supp. 970 (M.D.N.C.1966) the court held that a petitioner for a writ of habeas corpus was so intoxicated at the time he

made certain statements that he could not have knowingly and intelligently waived his right to remain silent and his right to counsel.

9. Nicholi v. State, 451 P.2d 351 (Alaska 1969).

of Officer Lancaster and Dr. Nicholas and Mr. Jefferies, and to disbelieve appellant's testimony and to make the determination that he did.

After a defendant has been advised of his constitutional rights, and the interrogation continues and a statement is taken—

> * * * a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.[10]

We believe that burden was met here. At the first interrogation at about 3:00 a. m. on October 10, 1966 appellant was advised of his rights under the requirements of *Miranda*. He stated that he did not want an attorney because he did not need one. At the second interrogation, at 1:40 p. m. on October 10, he was again advised of his rights, and signed a "Waiver of Constitutional Rights."[11] At this time appellant indicated that he did not want an attorney present. At the third interrogation, at 9:00 a. m. on October 11, appellant was advised of his constitutional rights. At the fourth interrogation, at 6:30 p. m. on October 11, he was asked if he was still aware of his rights. He said he was and consented to talk to the interrogating officers. At 9:00 a. m. on October 12 appellant dictated a written confession in which, after being advised of his rights under *Miranda*, he admitted starting the Lane Hotel fire. The written confession he signed contained a statement that he was aware of his rights to remain silent and the right to counsel, retained or appointed.

The facts show that the police were scrupulous in advising appellant of his rights under *Miranda*. We do not know what more the police could have done to afford appellant the opportunity to claim his privilege against self-incrimination and his right to counsel. When in the fact of all the warnings given, appellant still consented to be interrogated without demanding the presence of counsel to represent him, the conclusion is inescapable that he knowingly and intelligently waived his rights.

A final argument made by appellant on the *Miranda* aspect of this case is that his constitutional rights were not waived because the police indulged in cajolery. Appellant states that he was told he would get help only if he made a clean breast of everything. Appellant relies on that part of the *Miranda* opinion where the court said:

> [A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will, of course, show that the defendant did not voluntarily waive his privilege.[12]

The psychologist, Jefferies, told appellant that "if he felt he had any problems then the best way to start helping himself would be to make a clean breast of everything." This was not cajolery, it was merely an exhortation to tell the truth.[13]

A fire marshal, Hughton, who interviewed appellant, told him that if he made a clean breast of all the fires he had been involved in "he could get help." Hughton also told appellant that he was not a police officer and that appellant could talk to him about the fires.

A friend of appellant, Marion Woods, testified that he told appellant he should tell the truth and that if he did the police department would do all they could in getting someone to help appellant. Woods said that Officer Lancaster suggested to him that he should tell appellant that if he wanted help the police would see that he got it. Woods said that he and his sister told appellant that if he would tell the

---

10. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694, 724 (1966).

11. Note 7 *supra*.

12. Miranda v. Arizona, 384 U.S. 436, 476, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694, 725 (1966).

13. People v. Hill, 66 Cal.2d 536, 58 Cal. Rptr. 340, 426 P.2d 908, 916 (1967).

whole truth about everything "we had promises [of] some help for him."

■ We do not believe that telling appellant he could receive "help" if he told the truth about the fires constituted cajolery or trickery within the meaning of *Miranda*. The ultimate question in this situation is whether the assurances given appellant made his waiver of constitutional rights involuntary. There is no evidence that they did. Appellant did not testify that because of the promise of help he made a confession which he otherwise would not have made. At no time during the police interrogations did appellant indicate that he confessed to starting the Lane Hotel fire because of promises that he would receive help. There is no evidence that appellant even mentioned the subject of getting help during the interrogations. In these circumstances we believe that there is no justification for the conclusion that the promises to get help for appellant acted to overbear his will and make involuntary his waiver of his privilege against self-incrimination and his right to counsel. We find that such waiver was not involuntary— that it was knowingly and intelligently made.

Appellant's next point has to do with Criminal Rule 5(a) which provides:

The person arrested must in all cases be taken before the nearest available committing magistrate without unnecessary delay, and in any event within twenty-four hours after his arrest, including Sundays and holidays. This requirement shall apply to municipal police officers to the same extent as it does to the state police or other peace officers in making an arrest, with or without a warrant.

If the person arrested be taken for examination before a committing magistrate other than the one who issued the warrant the complaint and any statement or depositions on which the warrant was granted must be sent to the committing magistrate before whom the person arrested appears. When a person arrested without a warrant is brought before a committing magistrate a complaint shall be filed forthwith. The committing magistrate shall be available at all hours and times to receive bail, and shall have authority to delegate such duty to the person admitting the defendant to jail, or to such other person as shall in the judgment of the committing magistrate be qualified for such purpose.

Rule 5(a) of the Federal Rules of Criminal Procedure is similar—the person arrested must be taken before the nearest available commissioner "without unnecessary delay."[14] Under the *McNabb-Mallory* doctrine established by the United States Supreme Court, any confession obtained from an accused during a period of "unnecessary delay" under Federal Criminal Rule 5(a) must be excluded from evidence.[15] The reason for the doctrine is stated in Mallory v. United States where the court said:

Since such unwarranted detention led to tempting utilization of intensive interrogation, easily gliding into the evils of "the third degree," the Court held that police detention of defendants beyond the time when a committing magistrate was readily accessible constituted "wilful disobedience of law." In order adequately to enforce the congressional requirement of prompt arraignment, it was deemed necessary to render inadmissible incriminating statements elicited from defend-

14. Fed.R.Crim.P. 5(a) provides in part: An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available commissioner or before any other nearby officer of power to commit persons charged with offenses against the laws of the United States.

15. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

ants during a period of unlawful detention.[16]

Appellant urges us to apply the *McNabb-Mallory* doctrine with respect to our Criminal Rule 5(a). Appellant argues that under that rule he was required to have been arraigned on the arson and homicide charges within 24 hours after he was arrested for driving while under the influence of intoxicating liquor, that since the arraignment did not take place until after that period of time he was illegally detained, and that since his confession to starting the Lane Hotel fire was made during a period of illegal detention it should have been excluded from evidence.

At the time of appellant's arrest at 2:10 a. m. on October 10 on the charge of driving while intoxicated, the police did not know that he had started the Lane Hotel fire and had no reason to arrest him for that crime. Appellant was arraigned the next morning on the charge for which he was arrested, entered a plea of guilty and was sentenced to five days in jail. He was lawfully in custody as a prisoner when interrogated on October 11. It was not until after 6:30 p. m. on October 11 that appellant orally admitted having started the Lane Hotel fire. He was arraigned on the charge of arson and murder at 3:45 p. m. on October 12, which was within 24 hours after the police had reason to arrest him for those crimes.

 Appellant's confession was not given during any period of unlawful detention. A realistic interpretation of Rule 5 (a) is that if a defendant is legally detained on a conviction of a crime, and the police do not have probable cause to arrest him for a second crime had he been free, he may be questioned while in custody and a statement obtained as to the second crime without violating the *McNabb-Mallory* doctrine.[17]

 If the arrest for driving while intoxicated had been a sham or subterfuge to permit the police to interrogate appellant as to the fire without complying with Criminal Rule 5(a), we would hold that appellant's confession would be inadmissible in evidence under the *McNabb-Mallory* doctrine. But that is not the case. Appellant was arrested at the time he committed the driving violation. The facts as to that violation showed that the arrest was justified. There was no evidence that the police had arrested appellant on a driving violation for the purpose of questioning him about the Lane Hotel fire.

The trial judge held a pretrial hearing to determine the admissibility of appellant's confession. It was ruled voluntary and admissible. At the trial Instruction No. 34 informed the jury of the following:

A confession is an admission by defendant of all the material facts constituting the crime charged. The very nature of a confession requires that the circumstances surrounding it be subjected to careful scrutiny always, in order to determine surely whether the confession was voluntarily and intentionally made.

If the evidence in the case does not convince beyond a reasonable doubt that a confession was made voluntarily and intentionally, the jury should disregard it entirely. On the other hand, if the evidence in the case does show beyond a reasonable doubt that a confession was in fact voluntarily and intentionally made by a defendant, the jury should consider it as evidence in the case against the defendant who voluntarily and intentionally made the confession.

If it appears from the evidence in the case that a confession would not have been made, but for some threat of harm either physically or psychologically or some offer or promise of immunity from

---

16. Mallory v. United States, 354 U.S. 449, 453, 77 S.Ct. 1356, 1358, 1 L.Ed.2d 1479, 1482 (1957).

17. Wakaksan v. United States, 367 F.2d 639, 645 (8th Cir. 1966); United States v. Close, 349 F.2d 841, 850–851 (4th Cir. 1965).

prosecution, or leniency in punishment, or other reward, such a confession should not be considered as having been voluntarily made, because of the danger that a person accused might be persuaded by the pressure of hope or fear to confess as facts things which are not true, in an an effort to avoid threatened harm or punishment, or to secure a promised reward.

Appellant contends that this instruction was defective because the jury was not told that they should determine, in accordance with the rule of *Miranda*, whether appellant had been warned of his right to remain silent and his right to counsel, and whether he waived those rights.

At the trial appellant's objections to Instruction No. 34 were not based on the reasons he now assigns for contending that the instruction was defective. Appellant's objections at the trial were to change the words "the evidence" to "any evidence" in the last paragraph of Instruction No. 34, and to change the last paragraph to read:

Any evidence that the accused was threatened, tricked or cajoled into a waiver of his right to counsel, shows that

the defendant did not voluntarily waive his privilege. Therefore, if you find there is any evidence that the accused was threatened, tricked or cajoled into waiving his right to counsel, you will make a special finding upon the special verdict form given you and return this verdict form along with the others provided. The fact of lenghty [sic] interrogation or incommunicato [sic] incarceration before a statement is made is strong evidence that the accused did not validly waive his rights.

Nor did appellant request an instruction to the effect that the jury should determine, in accordance with the rule of *Miranda*, whether appellant had been warned of his right to remain silent and his right to counsel, and whether he had waived those rights.

 We shall not consider this point. The instruction which appellant now contends ought to have been given was not a basic, mandatory instruction under Criminal Rule 30(b).[18] Under Criminal Rule 30(a), the failure of the court to give an instruction which was not required under Rule 30(b), and which was not requested by appellant at the time of trial, is not assignable as error.[19]

18. Crim.R. 30(b) provides:
Except as otherwise provided by statute or by these rules, the court shall instruct the jury that they are the exclusive judges of all questions of fact and of the effect and value of evidence presented in the action. The court shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict, and whether or not requested to do so, shall give the following basic instructions on all proper occasions:
 (1) That a witness wilfully false in one part of his testimony may be distrusted in other parts.
 (2) That the testimony of an accomplice ought to be viewed with distrust and the oral admissions of a party with caution.
 (3) That guilt shall be established beyond reasonable doubt.

19. Crim.R. 30(a) provides:
At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. The instructions shall be reduced to writing and read to the jury and shall be taken to the jury room by the jury. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objections. Opportunity shall be given to make the objection out of the hearing of the jury by excusing the jury or hearing objections in chambers.

Daniels v. State, 388 P.2d 813, 816 (Alaska 1964).

At the arraignment on the charge of murder and arson, before appellant had counsel to represent him, he attempted to plead guilty to the charges. The judge refused to accept the plea, stating:

No—no, I'm not allowing you to—I will not take a plea at this time and we'll disregard any statement you made relative to any guilt in this * * *.

At the trial, during cross-examination of appellant, the prosecutor asked appellant if he had attempted to plead guilty at his arraignment, and appellant answered, "Yes, I did." Appellant's counsel moved for a mistrial, which was denied. The court then told the jury that appellant had entered a not guilty plea and that they were to disregard appellant's comments as to a former plea.

Appellant contends that evidence of his attempt to plead guilty at his arraignment was not admissible, that it was prejudicial, and that the prejudicial effect of such evidence was not obviated by the court's admonition to the jury.

The result of the court's determination not to accept the guilty plea was that the plea had no effect. It was a nullity. Its subsequent use as evidence against appellant would be in direct conflict and totally inconsistent with that determination. Appellant is right in contending that the attempt to plead guilty was not admissible in evidence. When the plea was annulled by the court's refusal to accept it, it ceased to be evidence.[20] If it were permitted to be used against appellant, the effect would be to reinstate a guilty plea which could not constitutionally in these circumstances be the basis for a judgment of conviction.

The remaining question on this point is whether the prosecutor's question

and appellant's answer as to his attempt to enter a guilty plea was so prejudicial as to require a new trial. We believe it was not. The trial judge's prompt admonition to the jury to disregard any reference to a former plea lessened the possibility of the jury becoming prejudiced against appellant. In addition, even though reference to an attempt to plead guilty would go to the main issue of appellant's guilt, there was clear and convincing evidence, apart from the reference to a former plea, from which the jury could have found appellant guilty of the crimes charged.[21] We are satisfied beyond a reasonable doubt that the error did not contribute to appellant's conviction.[22]

Pursuant to a stipulation between counsel for appellant and the state, appellant was subjected to psychiatric examinations concerning his competency to stand trial. During the course of these examinations he admitted on two occasions that he had started the Lane Hotel fire.

At the trial, during the cross-examination of appellant, the prosecutor asked him if he had told the psychiatrist that he had set the Lane Hotel fire. Before appellant answered his counsel objected and the objection was sustained. Appellant claims this question was improper and prejudicial under AS 12.45.100 which provides in relevant part:

No statement made by the accused in the course of an examination into his sanity or mental competency * * * may be admitted in evidence against the accused on the issue of guilt in a criminal proceeding.

The statute is clear enough. The prosecutor's question was improper. The question was not answered, and even though appellant's counsel moved for a mistrial he did not request that the jury be instructed to disregard the question and the implica-

20. Kercheval v. United States, 274 U.S. 220, 224, 47 S.Ct. 582, 71 L.Ed. 1009, 1012 (1927). *See* Annot., 86 A.L.R.2d 326 (1962).

21. Anderson v. State, 438 P.2d 228, 232–233 (Alaska 1968).

22. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–711 (1967).

tion contained in it.[23] In these circumstances, and because there was ample evidence in the record of appellant's guilt, we find there was no such prejudice as to require reversal and a new trial. We do not condone improper questions, such as the one here. In other circumstances such impropriety on a prosecutor's part might require reversal of a conviction.

During the trial agents of the United States Air Force Office of Special Investigation testified that appellant had been interviewed and had been advised of his rights under Article 31 of the Uniform Code of Military Justice. Under the military code appellant was warned that he could remain silent and that any statement he made could be used against him in a military trial. There were five such interviews that had taken place in 1964 and 1965. In addition, a Federal Bureau of Investigation agent testified that he had had two interviews with appellant and at both interviews appellant had been given a full *Miranda* type warning.

At no time did either appellant's or the state's counsel make any reference to the reason for the interviews. The trial judge refused to allow the jury to see the transcripts of the interviews because he considered the material in the transcripts to be prejudicial to appellant. But he did allow admission of the testimony of the interviewers to show that appellant had been warned of his constitutional rights on other occasions. Appellant claims that admission of this testimony was prejudicial error.

This evidence does not, contrary to appellant's assertion, tend to show that appellant had a criminal disposition so as to make the evidence inadmissible.[24] All that the jury heard was testimony by the agents that on other occasions, prior to interviews with ap-

pellant, he had been advised of his constitutional rights. The subject of the interviews or interrogations was never mentioned. The jury was not advised that appellant had been interrogated as one suspected of having committed other crimes.

Appellant contends that this testimony was inadmissible to prove that warnings given at prior times would establish that the Anchorage city police gave appellant the necessary warnings at the times he was interrogated about the Lane Hotel fire. That was not the purpose of the testimony. There was no question but that appellant had been given repeated warnings as to his rights prior to the Lane Hotel fire interrogation. The purpose of the testimony of the Air Force and FBI agents was to show that appellant knew what warnings meant when he was given them by the Anchorage police.

We find that the questioned evidence was admissible. It was relevant because appellant's prior experience with investigative interrogations, where he was advised of his constitutional privilege against self-incrimination and his right to counsel, would tend to show that when he was advised of those same rights by the Anchorage police he understood what those rights were. The background and experience of an accused are important factors in determining whether there has been an intelligent waiver of such rights.[25]

Prior to trial the court denied appellant's motion to employ at state expense an independent fire investigator to assist appellant in his defense. At the trial John Kennedy was called by the state and testified as an expert witness on fires. Appellant's counsel did not cross-examine Kennedy, contending that since the court had previously denied his motion to retain an arson ex-

23. *See* Cellino v. United States, 276 F.2d 941, 946–947 (9th Cir. 1960); State v. Lee, 404 S.W.2d 740, 748 (Mo.1966).

24. In Watson v. State, 387 P.2d 289, 293 (Alaska 1963) we said that evidence of a prior crime is inadmissible to show criminal disposition.

25. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 1466 (1938); State v. Vangen, 72 Wash.2d 548, 433 P.2d 691, 694 (1967).

pert to aid the defense, he was not capable of cross-examining the witness.

Appellant argues that the refusal of the court to appoint an expert on fires to assist him resulted in a denial of his right to cross-examine the state's expert witness because appellant's counsel had insufficient knowledge of fires to conduct an intelligent cross-examination. This situation, appellant contends, amounted to a deprivation of his right to the assistance of counsel guaranteed by the sixth amendment[26] to the federal constitution as extended to the states by the fourteenth amendment.

The constitutional guarantee of assistance of counsel means that such assistance must be effective.[27] We defined what is meant by "effective assistance of counsel" in Anderson v. State[28] where we quoted with approval from Mitchell v. United States[29] as follows:

> We think the term 'effective assistance' —the courts' construction of the constitutional requirement for the assistance of counsel—does not relate to the quality of the service rendered by a trial lawyer or to the decisions he makes in the normal course of a criminal case; except that, if his conduct is so incompetent as to deprive his client of a trial in any real sense—render the trial a mockery and a farce is one descriptive expression,—the. accused must have another trial, or rather, more accurately, is still entitled to a trial.

We do not merely look to one phase of the trial—the testimony of the fire expert, Kennedy—to determine whether appellant has had the effective assistance of counsel. We must look to the whole trial to make that determination. By no stretch of the imagination could this trial be characterized as a mockery or a farce. Appellant had two full time attorneys appointed to represent him, in addition to the assistance of a third in the selection of the jury. The record clearly reflects the ability and diligence of appellant's counsel; it is apparent that they worked long and hard on the defense. Counsel may have been placed at some disadvantage by not having an expert on fires to advise them. But considering counsels' experience and ability, we doubt that the disadvantage was so great that they were completely helpless in knowing how to cross-examine the state's expert witness. Attorneys are often called upon to become knowledgeable, without the assistance of an expert witness, with respect to scientific and other areas outside the confines of the law. Counsel in this case may have had reason not to cross-examine the state's expert witness. But after examining the record and observing the careful and competent job counsel did for appellant, we are in no way convinced that the absence of cross-examination resulted from any lack of ability on counsel's part. Appellant was not deprived of the effective assistance of counsel.

Appellant also contends that the court's denial of his request to have an expert on fires appointed at state expense to assist him deprived him of due process of law and equal protection of the laws. We disagree. This is not a case where the kind of trial a man gets depends on the amount of money he has.[30] What we have just said as to the issue of effective assistance of counsel is pertinent here. There is noth-

26. The sixth amendment to the federal constitution guarantees that "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence." Article I, section 11 of the Alaska constitution contains an identical guarantee.

27. Anderson v. State, 438 P.2d 228, 230 (Alaska 1968); Mead v. State, 445 P.2d 229 (Alaska 1968).

28. 438 P.2d 228, 230 (Alaska 1968).

29. 104 U.S.App.D.C. 57, 259 F.2d 787, 793, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958).

30. Cf. Nichols v. State, 425 P.2d 247, 254 (Alaska 1967).

ing fundamentally unfair about not appointing an expert to assist an indigent defendant in his defense where it appears, as it does here, that the disadvantage of not having the advice of such an expert is not so great as to deprive a defendant of a fair trial.[31]

The Lane Hotel burned on September 12, 1966. On October 11 and 12, 1966, while appellant was in custody on conviction of the offense of driving while intoxicated, he admitted having started 10 other fires on October 2 or 3 and October 9, 1966. This evidence was ruled admissible over appellant's objection. Appellant contends that this ruling was error because the evidence was not relevant to show that appellant had started the Lane Hotel fire, and that the admission of such evidence was seriously prejudicial to him.

In Watson v. State [32] we stated:

Evidence that reveals the commission of an offense other than that for which the defendant is being tried is inadmissible if it is relevant merely to show criminal disposition. But such evidence is admissible, even when it shows the defendant's prior trouble with the law, when it is relevant to prove some other material fact.

The "material fact" that evidence of the commission of another offense might be relevant to prove includes, among other things, the identity of a defendant as the one who committed the offense for which he is being tried.[33]

The evidence was admissible here under this rule. Appellant used a distinctive technique in starting the 10 fires in October 1966—the fires being started in piles of trash behind buildings, often with the aid of crushed paper towels or tissue. A strikingly similar method was used to start the Lane Hotel fire, appellant stating that he started that fire with paper towels he had gotten out of a trash bucket. There was sufficient similarity between the method of starting the October trash fires and the September Lane Hotel fire to make the facts of the October fires relevant evidence of the identity of appellant as the one who had started the hotel fire less than a month before.[34]

Appellant was convicted of 14 counts of manslaughter. He was sentenced to imprisonment for three consecutive 20-year sentences on three counts of manslaughter, and to concurrent sentences of 20 years on each of the remaining 11 counts. The net result was that appellant was sentenced to 60 years in prison.

31. *But see* the Criminal Justice Act of 1964, 18 U.S.C.A. § 3006A, which provides in subsection (e), with respect to federal courts, as follows:

(e) *Services other than counsel.*— Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case may request them in an ex parte applicacation. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant. The court may, in the interests of justice, and upon a finding that timely procurement of necessary services could not await prior authorization, ratify such services after they have been obtained. The court shall determine reasonable compensation for the services and direct payment to the organization or person who rendered them upon the filing of a claim for compensation supported by an affidavit specifying the time expended, services rendered, and expenses incurred on behalf of the defendant, and the compensation received in the same case or for the same services from any other source. The compensation to be paid to a person for such service rendered by him to a defendant under this subsection, or to be paid to an organization for such services rendered by an employee thereof, shall not exceed $300, exclusive of reimbursement for expenses reasonably incurred.

32. 387 P.2d 289, 293 (Alaska 1963).

33. *Id.* n. 7.

34. Nicholi v. State, 451 P.2d 351, 357 (Alaska 1969).

As his last point on this appeal appellant argues that the imposition of three consecutive 20-year sentences was error because the manslaughter offenses were part of one transaction and the sentence should have been only for one term of 20 years.

What appellant is asking us to do is to review a criminal sentence for abuse of discretion of the sentencing judge. The majority of this court still adheres to its previously expressed view that it does not have the authority to review and modify sentences for abuse of discretion.[35]

We have carefully examined all of appellant's points on this appeal in the light of all the proceedings in this case and the entire record. We do not find that any of appellant's substantial rights have been prejudiced. The trial judge was at all times cognizant and protective of appellant's rights. Appellant was ably represented by counsel whose performance measured up to the highest standards of their profession. Appellant had a fundamentally fair trial. The judgment is affirmed.

35. Bear v. State, 439 P.2d 432 (Alaska 1968).