Bobby DOISHER, Appellant,

v.

STATE of Alaska, Appellee.

No. 4369.

Supreme Court of Alaska.

Jan. 21, 1983.

As Amended on Denial of Rehearing
March 15, 1983.

Walter L. Carpeneti, Juneau, and Bobby Doisher, pro se, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, MATTHEWS and COMPTON, JJ.

OPINION

RABINOWITZ, Justice.

Appellant Bobby Doisher was convicted after trial by jury of the felony murder of Sherry Stewart. The state asserted that Doisher lured Stewart, a cocaine dealer, into a meeting in an isolated woods on the pretext that he would sell her a quarter pound of cocaine and that at this meeting he killed her while robbing her of approximately $7,000. Doisher's conviction was affirmed by the court of appeals, which rejected all specifications of error.[1] Thereafter, Doisher, pursuant to Appellate Rule 302, filed a petition for hearing in which he sought this court's review of the court of appeals' affirmance of his conviction. We subsequently granted the petition with respect to only one issue, namely, whether the superior court erred in admitting testimony by Peggy Gardner from which the jury was allowed to infer that Doisher had made an adoptive admission or an admission by silence.[2]

Sherry Stewart was killed on May 17, 1977. In June 1977, Doisher and a friend, Peggy Gardner, drove to Seward together with Doisher's and Gardner's young children. In the evening, when they returned to Doisher's home, they were confronted by Doisher's wife, Karin. They observed Karin spray painting Gardner's auto with red paint. When Karin noticed her husband and Gardner drive up, she got into her automobile and while attempting to run it into Gardner's car knocked down a beam supporting the sun porch of the house. Karin was screaming continuously while driving the car back and forth, essentially accusing Gardner of "fooling around" with Karin's husband. Doisher had to break a

---

1. *Doisher v. State,* 632 P.2d 242 (Alaska App. 1981).

2. Doisher's petition for hearing as it relates to all other issues was denied.

window of the car in order to restrain Karin and remove their baby who was in the car with Karin. Karin then broke away from Doisher and continued screaming insults, threats, and accusations at her husband and Gardner while they tried to physically restrain her and calm her down. Eventually, Karin ran up a hill behind the house, followed by Doisher and Gardner. "There, among other things, she said to Gardner 'He'll do to you what he did to Sherry.' Doisher made no response to this statement, nor did Gardner."[3] The superior court, over Doisher's objection, ruled that Gardner's testimony regarding Karin's statement, "He'll do to you what he did to Sherry," was admissible in evidence on the theory that it was an adoptive admission (an admission by silence).[4] Resolution of this issue is controlled by *Blue v. State*, 558 P.2d 636 (Alaska 1977), and *Watson v. State*, 387 P.2d 289 (Alaska 1963).

In *Watson*, we formulated the following limitations concerning application of the adoptive admission, admission by silence, exception to the hearsay rule.

> It will come into play only when the circumstances are such that the accused's silence makes it more probable than not that he knew or believed the statement to be true. The rule is not applicable in circumstances where a reply is not called for, or where silence is equally consistent with a state of mind other than acquiescence in the truth of what was said.[5] (footnote omitted)

Subsequently, in *Blue v. State*, 558 P.2d 636 (Alaska 1977), we had occasion to elaborate further upon some of the requisites for the admissibility of these types of statements. In this regard, we said:

Because of the weakness of the correlation between guilt and an admission by silence or an equivocal or evasive response, the courts have imposed various conditions upon the introduction into evidence of a statement on the theory that it is an implied admission. To constitute proof of such an admission, the evidence must disclose that: 1) the statement was extrajudicial, 2) it was incriminatory or accusative in import, 3) it was one to which an innocent man would in the situation and surrounding circumstances naturally respond, 4) it was uttered in the presence and hearing of the accused, 5) he was capable of understanding the incriminatory meaning of the statement, 6) he had sufficient knowledge of the facts embraced in the statement to reply to it and 7) he was at liberty to deny it or reply to it. 29 Am.Jur.2d *Evidence* § 638, at 692 (1967); *see also* McCormick on Evidence § 270, at 652–53 (2d ed. 1972); *Watson v. State*, 387 P.2d 289, 291–92 (Alaska 1963). To this list should be added that the defendant is not exercising a constitutional right to remain silent. A defendant's silence at a time when he is exercising a constitutional right to silence, *e.g.*, after receiving a *Miranda* warning, cannot be offered as evidence against him at trial. *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91, 97 (1976); *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *United States v. Impson*, 531 F.2d 274 (5th Cir.1976). When confronted with incriminating statements by another person in such circumstances, the defendant's silence can-

---

**3.** *Doisher v. State*, 632 P.2d 242, 254 (Alaska App.1981).

**4.** In his brief before the court, Doisher characterizes the factual context out of which the alleged admission by silence arose as a "... maelstrom. It represented a firestorm of emotional and physical disaster."

**5.** *Watson v. State*, 387 P.2d 289, 291 (Alaska 1963). Watson involved a homicide. During the early stages of the police investigation, Watson's wife was informed by an officer that

her husband had shot the victim. The police officer testified that Watson's wife then exclaimed, "Oh, no," and turning to her husband said, "It's your temper, your temper has done it again." The state sought to introduce, relying on an adoptive admission rationale, both the statement of Watson's wife and Watson's failure to deny the truth of the statement as evidence of acquiescence by the accused in the truth of the statement and as indication of a consciousness of guilt. *See also* Alaska R.Evid. 801(d)(2)(A).

not be held to be an adoption of such statements. *See e.g., Glinsey v. Parker,* 491 F.2d 337, 342 (6th Cir.1974).[6]

In *Doisher v. State,* 632 P.2d 242, 255 (Alaska App.1981), the court of appeals held, in part, that there was sufficient evidence to conclude that the testimony of Peggy Gardner was admissible in evidence as demonstrating an admission by silence.[7] In our view, the superior court's admission of Gardner's statement and evidence of Doisher's lack of response thereto was error in light of the criteria governing adoptive admissions which were enunciated in *Watson* and *Blue.*

Of particular significance is our conclusion that in its essential facts Doisher's case is indistinguishable from *Watson,* where we concluded that the adoptive admission exception was inapplicable. In *Watson,* the accused had admitted to the police during a two-hour interrogation that he had shot and killed a man in self defense. Thereafter, [w]hen following this his wife made the statement 'It's your temper, your temper has done it again.' *Watson's failure to comment is entirely consistent with an understandable weariness and a reluctance* to explain once again the events that he had already explained to the police, *and a reluctance also to engage in a controversy with his wife who at the time was in a state of shock and not very coherent.* In these circumstances, we believe that the failure by Watson to reply to his wife's statement does not give rise to any inference that he thereby impliedly acknowledged that he had shot Grissom in a fit of temper rather than, as he claimed, in self-defense.[8] (emphasis supplied)

Given the physical actions and general conduct of Doisher's wife which led to the utterance in question, we conclude that Doisher's failure to comment is consistent with a reluctance to engage in, or to continue, a controversy with his wife who at the time was in a highly charged emotional state and was not acting in a rational manner.[9] In short, we hold that the particular circumstances did not call for a reply on Doisher's part since the statement was not one to which an innocent man would in the situation and surrounding circumstances naturally respond, and thus the admission of this testimony was error.[10]

Our holding concerning the adoptive admission issue necessitates a further determination on our part as to whether the error in admitting this evidence was prejudicial error. Here again we believe that *Watson* indicates the answer. In determining whether the error in admitting the statement was prejudicial error, we stated:

A jury would naturally assume that a wife, more than anyone else, would have a special familiarity with her husband's

6. *Blue v. State,* 558 P.2d 636, 645 n. 21 (Alaska 1977).

7. In reaching this conclusion the court of appeals alluded to the fact that "The trial judge ruled that it was a reasonable inference that Doisher would have normally responded to this accusation, and that his failure to respond was some evidence of guilt which the jury could weigh." *Doisher v. State,* 632 P.2d 242, 255 (Alaska App.1981).

8. *Watson v. State,* 387 P.2d 289, 292 (Alaska 1963).

9. In *Doisher v. State,* 632 P.2d 242, 255 n. 19 (Alaska App.1981), the court, in part, distinguished *Watson* on the following grounds:

In Doisher's case the testimony was clear that he did not respond to his wife's accusation. Doisher had not been subjected to long police questioning; we do not have a conflict with Doisher's constitutional right as we could have in a situation in which he was in the presence of police officers.

10. Our holding makes it unnecessary to address the issue of whether the probative value of this admission by silence was outweighed by its prejudicial impact. Alaska R.Evid. 403 reads as follows:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

We agree with the court of appeals' observation that resolution of the question of whether the superior court abused its discretion in admitting this evidence is "a close question." 632 P.2d at 255.

character and temperament. The purport of Mrs. Watson's statement was that she believed that Grissom had been killed because her husband had lost control of his temper. This aspect was emphasized by the district attorney in his argument to the jury. We cannot say with any degree of assurance that this expression of belief, coming from the lips of Watson's wife, did not cause the jury to entertain grave doubts that Watson was speaking the truth when he said that he had shot Grissom in self-defense. There must be a new trial.[11]

We think the same considerations are relevant here. Review of the record in light of this erroneous ruling has persuaded us that the error was prejudicial and that therefore the case should be remanded for a new trial.[12]

BURKE, C.J., and CONNOR, J., not participating.

---

**11.** *Watson v. State,* 387 P.2d 289, 292 (Alaska 1963).

**12.** Admission of the hearsay statement potentially implicated Doisher's constitutional right of confrontation. See *California v. Green,* 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933–34, 26 L. Ed.2d 489, 495–96 (1970). If so, the applicable standard would be harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967); *Evans v. State,* 550 P.2d 830, 840 (Alaska 1976). However, we need not decide whether the constitutional error standard is applicable here since we have concluded that under the test for nonconstitutional error reversal is required. Based on this record we cannot say with fair assurance that the jury's decision was not substantially swayed by the erroneous introduction of Karen Doisher's statement. *Love v. State,* 457 P.2d 622, 631 (Alaska 1969).