[No. 35442.    Department One.    March 9, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. ALBERT
ALFRED FIDDLER, *Appellant*.[1]

[1]Reported in 360 P. (2d) 155.

*Horton Smith, Rocky V. Lindell,* and *Smith, Lindell, Krutch & Carr,* for appellant.

*Charles O. Carroll, James J. Caplinger, Dominick V. Driano,* and *Liem E. Tuai,* for respondent.

HUNTER, J.—The defendant, Albert A. F i d d l e r, was charged in the Superior Court for King County, by information in two counts, with committing the crime of carnal knowledge under RCW 9.79.020. In the first count the crime was alleged to have been committed, on or about April 2, 1959, upon the prosecutrix, his stepdaughter, who was then fourteen years of age. In the second count the crime was

alleged to have been committed upon the prosecutrix during the period intervening between April 1, 1958 and April 1, 1959. In a jury trial, the defendant was convicted on count II and found not guilty on count I. From the verdict of guilty on count II, judgment and sentence were entered from which the defendant appeals.

The appellant first contends the evidence was insufficient to support the crime charged and that the court erred in failing to grant his motion for a directed verdict of not guilty at the conclusion of the testimony in the case. We see no merit to this contention. The prosecuting witness testified directly, that she knew the meaning of "sexual intercourse" and that acts of sexual intercourse had taken place between herself and her stepfather on a number of occasions, in a dwelling where they resided in Maple Valley, King County, between April 1958 and April 1959, the last occasion being about April 1, 1959.

This evidence was sufficient to justify the submission of this case to the jury and if believed to support a verdict of guilty. The appellant argues, however, there are numerous inconsistencies in the testimony of the prosecutrix which makes her unworthy of belief, and without her testimony, there would be a failure of proof by the state. This argument goes to the credibility of a witness, which is clearly a jury function with which this court may not interfere. *State v. Foley*, 174 Wash. 575, 25 P. (2d) 565 (1933). The appellant's motion for a directed verdict was properly denied by the trial court.

The appellant assigns error to the trial court's refusal to give his requested instruction No. 3. This instruction would have entitled the jury to consider whether the prosecutrix made a complaint as soon as practicable after the act, whether the prosecutrix made an outcry during the assault, and that these matters could be considered in determining the credibility to be given the prosecutrix as a witness.

We have held it error for a trial court to refuse to give such a requested instruction in a statutory rape action where the indictment charged that the defendant did rape

a fifteen-year-old girl, by force and against her will. *State v. Griffin*, 43 Wash. 591, 86 Pac. 951 (1906). Since the existence of force was injected into that case by the indictment and the testimony of the prosecutrix, an instruction entitling the jury to consider whether the prosecutrix did not do something which she naturally should have done, had she been forcibly raped, was proper. This instruction raised the issue of the credibility of the prosecuting witness' testimony that she had been forcibly raped. However, we said in the *Griffin* case:

"The respondent suggests that, inasmuch as this is a charge of statutory rape and the question of force not material, the rules we have been discussing do not apply. *If this had been a case of voluntary intercourse on the part of the prosecuting witness, it is difficult to understand how the question of complaint of the outrage could enter into the case, as that human instinct which impels the woman to complain of an outrage of this kind when accompanied by force impels her with the same unerring certainty to conceal her shame where the intercourse is voluntary.* The prosecuting witness testified to a case of forcible rape. The complaint is admissible in such cases because it is the natural instinct of a woman to complain of an outrage of this kind at the first opportunity, and a law changing the age of consent does not work a corresponding change in human nature itself. . . ." (Italics ours.)

In the instant case no element of force is involved. The appellant contends, however, that the prosecutrix injected the existence of force into the case by her testimony as follows:

" . . . Q. Did you ever refuse to let him do this, Rose? A. No. Q. Why? A. Because he told if I ever told that he would deny it, and also he would kill me. . . ."

This does not constitute evidence of force by threat or violence employed by the appellant to obtain the consent of the prosecutrix for the criminal act. It is rather evidence of threats to avoid disclosure of such acts of misconduct to third persons.

This is a case of voluntary submission to intercourse on the part of the prosecuting witness, and the proposed in-

struction as to complaint and outcry was therefore not material to the issues of her credibility as a witness in the instant case. The appellant's proposed instruction No. 3 was properly refused by the trial court.

█ The appellant assigns error to the trial court admitting in evidence exhibits Nos. 15 and 26, which were letters written by the appellant to his wife. Appellant asserts the letters are privileged communications by reason of RCW 5.60.060 which states:

"The following persons shall not be examined as witnesses:

"(1) A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband; *nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage.* But this exception shall not apply to a civil action or proceeding by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other. . . ." (Italics ours.)

We are concerned here with the second part of the statute. We have consistently held that the communications referred to in this part of the statute mean successful confidential communications between the spouses during their marriage. In *State v. Thorne*, 43 Wn. (2d) 47, 260 P. (2d) 331 (1953), we stated:

" . . . The second part sets out an entirely separate and distinct privilege relating to confidential communications; it says that neither spouse can ever, without the consent of the other, be examined as to confidential communications made by one to the other during the marriage. . .

" . . .

" . . . It applies to all actually successful confidential communications made between the spouses while they are husband and wife.

"If the communication is heard by a third party, even if by eavesdropping, the third party may testify to it, since the privilege protects only successful confidences. *State v. Slater*, 36 Wn. (2d) 357, 218 P. (2d) 329 (1950); *Wolfle*

*v. United States*, 291 U. S. 7, 78 L. Ed. 617, 54 S. Ct. 279 (1934); 58 Am. Jur. 224, Witnesses, § 383."

We are satisfied the two letters from the appellant to his wife were not successful confidential communications.

■ The record discloses that the appellant's wife was unable to read or write. The communications undertaken by the husband, therefore, required that the letters be read to her by a third person. This act necessary for the communication removed the letters from the status of confidential. Moreover, it is apparent from the contents of the second letter, exhibit No. 26, that the appellant anticipated the letters would be read by his wife's sisters, Charlotte and Ruby, by his addressing remarks therein to them directly as follows:

". . . Mary and deare sister Charlete and Ruby. All you three sisters must realize by now that some one made Rosy do this to me, and it was no one other but her father and Frank. But if some one could talk to Rosy I am sure that Rosy would talk difrent. . . ."

Inasmuch as the letters were not successful confidential communications by the appellant to his wife, nor were they intended to be confidential to her, they did not come within the privilege afforded by the statute, RCW 5.60.060, *supra*. The trial court did not err by admitting exhibits Nos. 15 and 26 in evidence.

■ The appellant assigns error to the trial court permitting a "voluminous" number of witnesses called by the state to give testimony attacking the appellant's reputation for truth and veracity. The rule is well established in this state that once a defendant takes the stand in a criminal case, he subjects himself to cross-examination the same as any other witness, and the state has a right to impeach him as a witness to the extent of proving that his general reputation for truth and veracity in the community where he resides is bad. RCW 10.52.040. *State v. Ternan*, 32 Wn. (2d) 584, 203 P. (2d) 342 (1949). The appellant took the witness stand in the instant case, and the court allowed both the appellant and the state to call five character witnesses. We see no abuse of discretion of this ruling by the trial court.

■ Appellant assigns error to the trial court's permitting the state to cross-examine the appellant as to prior acts of misconduct. The appellant contends the rule that character or reputation of a defendant cannot be shown by evidence of particular acts was violated. We disagree. The rule does not apply to the situation presented. The record discloses the question to which the appellant objected was asked for the purpose of impeaching the appellant in relation to certain testimony on direct examination. The following question was asked the appellant on direct examination:

"Q. Have you ever had any trouble with the police, or have you ever had any past criminal convictions of any type? . . . A. No."

The question objected to on cross-examination was:

"Q. That is, you never had any difficulty with law enforcement people prior to this time?"

■ The question was proper for impeachment purposes to show a contradiction in the testimony of the witness. McCormick, Evidence § 47 (1954). The trial court did not err in permitting the state to ask the question. Other questions were thereafter interposed by the state concerning prior acts of misconduct to which the appellant now complains. The record discloses no objections were made to these questions in the trial court; they, therefore, cannot be considered for the first time on appeal.

■ The appellant assigns error to the trial court's refusal to allow evidence of similar charges made by the prosecutrix, on other occasions, against others. Since no offer of proof was made, we cannot review this question. *Sutton v. Matthews*, 41 Wn. (2d) 64, 247 P. (2d) 556 (1952).

Finally, the appellant assigns error to the trial court's refusal to grant a new trial. Finding no error in the record, the motion for a new trial was properly denied. The judgment entered by the trial court upon the verdict of guilty is affirmed.

FINLEY, C. J., DONWORTH, WEAVER, and OTT, JJ., concur.

---

April 26, 1961. Petition for rehearing denied.