Joseph H. JOHNSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 1338.

Supreme Court of Alaska.

Oct. 6, 1972.

Victor D. Carlson, Public Defender, Michael L. Rubinstein, Meredith A. Wagstaff, Asst. Public Defenders, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Robert L. Eastaugh, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and RABINO-WITZ, CONNOR and ERWIN, JJ. [BOOCHEVER, Justice, not participating].

## OPINION

BONEY, Chief Justice.

The defendant, Joseph H. Johnson, was tried by a jury and convicted of two counts. Count I charged him with living on the earnings of a prostitute in violation of AS 11.40.300.[1] Count II charged him with procuring a female for prostitution in violation of AS 11.40.350.[2]

At trial, the state called only one witness, a female then 15 years of age and of limited mentality. She had begun her career as a prostitute when she was 13 years old, and, was, by her own testimony, a thief and a user of marijuana, "speed," and mescaline. Her testimony, though replete with inconsistencies, alterations, and admitted lies, was generally to the effect that Johnson had led her into prostitution, and that he had lived, at least in part, on her earnings as a prostitute.

The sole witness presented by the defense was the prostitute's uncle. He testified that he knew Johnson and that he had seen his niece with Johnson in Anchorage during the period during which she had testified to being a prostitute working for Johnson. He stated that he had asked if Johnson thought it was right for the niece to be "out on the streets" and that the reply was "yes."

After his conviction, but prior to the entry of judgment, Johnson moved for a new trial based on newly discovered evidence in the form of the prostitute's recantation of her testimony. Before the motion was ruled on, a hearing to perpetuate the recantation testimony was held. At that hearing, the superior court informed the prostitute of the gravity of the offense of perjury and the seriousness of the penalty therefor. The court advised her that she had a right not to testify, that she had a right to a court appointed attorney, and that her testimony could be used against her in a prosecution for perjury. The prostitute chose not to testify.

Some evidence was, however, produced at the hearing. The prostitute's probation officer and mother did testify, presenting evidence refuting at least some of the prostitute's recantation. Three exhibits were also offered. The first was a transcription of the prostitute's unsworn oral recantation as recorded in the office of Johnson's counsel. The other two were her sworn statements made prior to trial,

1. AS 11.40.300 provides:
   A male person who acts as an employee or servant in and about a room, house, or place of prostitution, or who engages or assists in operating or managing a room, house or building for the purpose of carrying on prostitution, or a male or female person who knowingly lives on, or is supported in whole or in part by the money or other valuable consideration realized, procured or earned by a female person through the prostitution of any other female person is guilty of a felony, and upon conviction, is punishable by imprisonment in the penitentiary for not less than two years nor more than five years.

2. AS 11.40.350 provides:
   A person who induces, entices or procures, or attempts to induce, entice or procure a female for the purpose of prostitution or concubinage, or for other immoral purpose, or to enter a house of prostitution in the state, is guilty of a felony, and upon conviction is punishable by imprisonment in the penitentiary for a period of not less than two years nor more than 20 years, or by a fine of not less than $1,000, or by both.

both of which were substantially similar to her trial testimony.

The motion for a new trial was subsequently denied. Johnson was then sentenced to five years on each count, to be served concurrently.

Two sets of issues are raised on this appeal. The first relates to the denial of the new trial, the second to the applicability of AS 12.45.040,[3] our corroboration statute.[4]

## I

Johnson argues that the superior court erred in denying his motion for a new trial based on newly discovered evidence.

In denying Johnson's motion, the superior court relied upon our decision in Salinas v. State[5] where we adopted from Pitts v. United States[6] the standard for granting a new trial on the basis of newly discovered evidence:

A motion for a new trial based on the ground of newly discovered evidence has to meet the following requirements: (1) *It must appear from the motion that the evidence relied on is, in fact, newly dis-*covered, i.e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.[7]

The superior court concluded that, while the first four criteria had been met, the fifth criterion had not been satisfied.

■ A motion for a new trial is, by the clear weight of authority, addressed to the sound discretion of the trial judge.[8] Johnson does not argue that the superior court abused its discretion; indeed he concedes there was no abuse. Rather, Johnson argues that the "peculiar circumstances at bar" require a different rule of narrow application to those cases where each and every element of the state's case is dependent upon the credibility of a single witness who later recants. He argues that the fact of recantation calls the witness's veracity into issue, and, since reasonable men could

---

3. AS 12.45.040 provides:
   Upon a trial for inveigling, enticing, or taking away an unmarried female for the purposes of prostitution, or for seducing and having an illicit connection with an unmarried female, the defendant shall not be convicted upon the testimony of the injured female unless her testimony is corroborated by some other evidence tending to connect the defendant with the commission of the crime.

4. As originally filed, the appeal raised only issues going to the denial of the motion for a new trial. After confronting the parties at oral argument with the corroboration statute, this court ordered them to file supplemental briefs on the applicability of AS 12.45.040. The parties were specifically directed to discuss the following six questions:
   1. Is AS 12.45.040 applicable to either Count I or II of the indictment?
   2. Assuming AS 12.45.040 is applicable to either or both counts, discuss the sufficency of the evidence to corroborate the testimony of [the prostitute] as to the applicable count.
   3. Discuss the evidentiary test applicable under AS 12.45.040, and discuss spe-cifically the application of the rule announced in Oxenberg v. State, 362 P.2d 893 (Alaska 1961).
   4. Was an instruction concerning the corroboration of the testimony of [the prostitute] required? Discuss the type and content of any instruction required?
   5. Assuming there was no evidence sufficient to corroborate the testimony of [the prostitute], was it plain error to fail to apply the statute?
   6. Assuming there was evidence sufficient to corroborate the testimony of [the prostitute], was it plain error to fail to instruct as to the requirement of corroboration?

5. 373 P.2d 512 (Alaska 1962).

6. 263 F.2d 808 (9th Cir. 1959), cert. den'd, 360 U.S. 919, 79 S.Ct. 1438, 3 L.Ed.2d 1535 (1959).

7. *Id.* at 810; *quoted,* Salinas v. State, 373 P.2d 512, 514 (Alaska 1962).

8. United States v. Johnson, 327 U.S. 106, 111–112, 66 S.Ct. 464, 90 L.Ed. 562, 565–566 (1945); Pedersen v. State, 420 P.2d 327, 333 (Alaska 1966); Salinas v. State, 373 P.2d 512, 513 (Alaska 1962).

then differ on that issue, requires a new trial.

We disagree with Johnson and conclude that the instant case presents no special circumstances compelling a special rule. We agree with the United States Supreme Court that the orderly administration of criminal justice requires that the trial judge, who is by virtue of his relationship to the case exceptionally well qualified to pass on the newly discovered evidence, be the one to whose sound discretion the motion for a new trial be committed.[9] Here, the superior court had to consider the prostitute's unsworn recantation as against her trial testimony, her two sworn statements, and the testimony of her mother and her probation officer, all of which were generally consistent. In view of this evidence, the trial court was well within the bounds of discretion in concluding not only that the evidence would not produce an acquittal, but also that the recantation was not to be believed.

There was no error in denying the motion for a new trial.

## II

We turn now to the issues raised concerning the applicability of our corroboration statute.

Although the uncorroborated testimony of a victim of a sex crime was sufficient to support a conviction at common law,[10] her testimony was not received without question. As early as 1680 it was recognized that:

. . . [T]he credibility of [the victim's] testimony, and how far forth she is to be believed, must be left to the jury, and is more or less credible according to the circumstances of fact that concur in that testimony . . . . It is one thing whether a witness be admissible to be heard; another thing, whether they are to be believed when heard. It is true, rape is a most detestible crime, and therefor ought severely and impartially to be punished by death; but it must be remembered that it is an accusation easily to be made and hard to be proved; and harder to be defended by the party accused, tho never so innocent.[11]

The unjust convictions derived from factually unfounded accusations result from:

. . . [T]he heinousness of the offense many times transporting the judge and jury with so much indignation that they are hastily carried to the conviction of the person accused thereof, by the confident testimony sometimes of malicious and false witnesses.[12]

The early articulations of reasons for requiring corroboration were couched in terms of protecting male defendants from the untruthful accusations of unchaste and immoral women.[13] The possibility that unfounded malice[14] or blackmail[15] might lead to a false accusation has also motivated the courts to require corroboration of the complaining witnesses' testimony. Among the accusations most productive to a blackmailer are those which can be committed verbally, such as inducing a female

9. United States v. Johnson, 327 U.S. 106, 111–112, 66 S.Ct. 464, 90 L.Ed. 562, 565–566 (1945).

10. 7 J. Wigmore, Evidence § 2061, at 342 (3d ed. 1940).

11. I, M. Hale, Pleas of the Crown 633, 635 (1680), quoted in 7 J. Wigmore, Evidence § 2061 at 342, 345; see Kelly v. United States, 90 U.S.App.D.C. 125, 194 F.2d 150, 153 (1952); State v. Dixon, 47 Haw. 444, 390 P.2d 759 (1964); De Armond v. State, 285 P.2d 236, 238 (Okl. Cr.1955); Rice v. State, 195 Wis. 181, 217 N.W. 697, 698 (1928).

12. I, M. Hale, Pleas of the Crown 363 (ed. 1778), quoted in De Armond v. State, 285 P.2d 236, 238 (Okl.Cr.1955).

13. E. g., Boddie v. State, 52 Ala. 395, 398 (1875), quoted in 7 J. Wigmore, Evidence § 2061 at 345 (1940).

14. People v. Jordan, 23 Mich.App. 375, 178 N.W.2d 659, 662 (1970) (a startling example of a conviction for rape based upon uncorroborated testimony).

15. Kelly v. United States, 90 U.S.App.D.C. 125, 194 F.2d 150, 153 (1952).

for the purpose of prostitution as charged in Count II. As to another verbally committed offense, the Court of Appeals for the District of Columbia has noted that a threat to charge one with such an offense:

> . . . [H]as been held repeatedly to be sufficiently equivalent to force and violence to constitute robbery if the threatened person parts with money because of the threat. 'So abominable is the crime, and so destructive is even the accusation of it, of all social right and privilege, that the law considers that the accusation is a coercion which men cannot resist. This seems to be the only case in which a threat to prosecute, will supply the place of actual force.' [16]

Courts have also recognized that motives far more subtle than blackmail or overt malice might lead to unfounded allegations of sexual misbehavior. Psychological motives may cause even mature complainants to bring false charges.[17] Complainants have been known to have fantasized sexual attacks and then to have described the surrounding circumstances so convincingly that one might conclude that they themselves believed their own testimony.[18]

■ AS 12.45.040, our corroboration statute, applies to prosecutions for inveigling,[19] enticing,[20] or taking away an unmarried female for the purposes of prostitution.[21] Count II refers to AS 11.40.350 which prohibits one from "induc[ing], entic[ing] or procur[ing] . . . a female for the purpose of prostitution." [22] Both the purposes underlying our corroboration statute and the similarity in phrasing between AS 12.45.040 and AS 11.40.350 dictate that corroboration be required for conviction of Count II.

■■ The transaction alleged in Count I however, is economic, not sexual; the purpose of AS 11.40.300 is to inhibit prostitution, rather than to protect the chastity of young women. Under Count I, there is no "injured female" within the meaning of that phrase as used in AS 12.45.040.[23] The possibility that an accusation such as is made in Count I might be motivated by spite or abnormal psychological condition has not been recognized as being any greater than for other nonsexual offenses. The purpose of AS 12.45.040 is thus irrelevant to Count I. We conclude, therefore, that there was no error in not applying the corroboration statute to Count I.[24]

■ The testimony of accomplices, like that of injured females, must be corroborated in order to support a conviction.[25] The inherent distrust which attaches to accomplice testimony is very similar to that which attaches to the testimony of injured females: either type of testimony may be motivated by blackmail, malice, or an abnormal psychological condition.[26] We

---

16. *Id.* (footnotes omitted) *quoting* Long v. State, 12 Ga. 293, 319 (1852).

17. State v. Butenhoff, 279 Minn. 177, 155 N.W.2d 894, 899 (Minn.1968).

18. Coltrane v. United States, 135 U.S.App. D.C. 295, 418 F.2d 1131, 1134 (1969).

19. "To lead on or astray by blinding, or deceiving; to ensnare or win over by guile; to entice by cajoling . . .. To practice alluring, enticing, or ensnaring." Webster's New International Dictionary of the English Language 1305 (2d ed. 1960).

20. "(1.) To incite or instigate. (2.) To draw on by exciting hope or desire; to allure; attract . . .. Often, in a bad sense, to lead astray; to induce to evil, to tempt." Webster's New International Dictionary of the English Language 854 (2d ed. 1960).

21. Note 3 *supra.*

22. Note 2 *supra.*

23. Johnson's contention that "illicit connection," as mentioned in AS 12.45.040, encompasses living off the earnings of a prostitute is unfounded. "Illicit connection" is a Victorian euphemism for unlawful sexual intercourse. Black's Law Dictionary 883 (4th ed. 1951).

24. *Accord,* State v. Hargon, 2 Or.App. 553, 470 P.2d 383, 385 (1970); State v. McCowan, 203 Or. 551, 280 P.2d 976, 979 (1955).

25. AS 12.45.020.

26. The desire to self-exculpate may lead a person to falsify accomplice testimony. A similar motivation, to escape prosecution as a prostitute in exchange for testimony against the person who procured her, may apply to injured females.

therefore conclude that the proper standard by which to determine if there was adequate corroboration should be the same for accomplices and injured females. · We have previously discussed at length the standard for corroboration of accomplice testimony in Oxenberg v. State.[27] As modified for the present context the features of the test are as follows: the corroborating evidence should be considered in conjunction with the prostitute's testimony; such evidence must be consistent and harmonious with her testimony; the corroborating evidence will then be adequate for purposes of AS 12.45.040 if it dispels the assumed distrust of the prostitute's testimony which in the first instance lead to the corroboration requirement.[28]

■■ Here, we can find no corroborating evidence which the jury could have considered.[29] The testimony of the prostitute's uncle, discussed above, was consistent and harmonious with the prostitute's own testimony in that it *may* be read to indicate that she was in fact a prostitute and that Johnson was aware of her career. However, it can not be read to support the prostitute's testimony that Johnson had led her into her profession and thereby violated AS 11.40.350. Thus the uncle's testimony in no way dispels the distrust which gives rise to the corroboration requirement.

We hold, therefore, that, while corroboration was needed for conviction of the offense charged in Count II, there was none.

We next must consider whether or not the failure of the trial court to apply AS 12.45.040, and thereby to instruct the jury on the need for corroboration, constitutes plain error. ·

■ We believe that a corroboration instruction requirement would serve three purposes: the judge would be required to make a preliminary determination that the evidence, if believed by the jury, is sufficient to satisfy the need for corroboration;[30] the instruction would call to the attention of the jury the fact that the testimony in need of corroboration may be motivated or influenced by factors which should lessen its credibility unless it is adequately corroborated; it would require that, before the jury can find the defendant guilty, it must find the corroborative evidence credible and supportive of the testimony of the injured female.[31] We fail to see how the *Oxenberg* standard of corroboration can be implemented and how the purposes of AS 12.45.040 can be effectuated[32] unless the jury is instructed as to corroboration. We therefore hold that it was plain error not to apply the corroboration statute and thereby not to instruct the jury on corroboration. The conviction on Count II must be reversed.[33]

Johnson's conviction for living off the earnings of a prostitute, as charged in Count I, is affirmed. His conviction for procuring a female for prostitution, as charged in Count II, is reversed. The case is remanded with directions to dismiss Count II.

27. 362 P.2d 893, 895–898 (Alaska 1961).

28. *Id.* at 897.

29. We note that the testimony of the prostitute's probation officer and mother was generally consistent and harmonious with that of the prostitute. However, their testimony was not before the jury but was only brought forth at the hearing to perpetuate testimony to be considered in ruling on the motion for a new trial. Their testimony can not, therefore, be considered for purposes of AS 12.45.040.

30. *See* State v. Dess, 154 Mont. 231, 462 P.2d 186, 190 (Mont.1969).

31. *Cf.* United States v. Bryant, 137 U.S. App.D.C. 124, 420 F.2d 1327, 1332 (1969) (rape instructions).

32. We further note that AS 12.45.040 states that "the defendant *shall not be convicted*" on uncorroborated testimony. (Emphasis added.) The plain meaning of the emphasized phrase requires reversal.

33. *See* Bargas v. State, 489 P.2d 130, 133 (Alaska 1971).