James K. DEMMERT, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 2973.

Supreme Court of Alaska.

June 2, 1977.

Clifford H. Smith, Ziegler, Cloudy, Smith, King & Brown, Ketchikan, for appellant.

Geoffrey G. Currall, Dist. Atty., Ketchikan, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

## OPINION

BURKE, Justice.

After a non-jury trial in the superior court, James K. Demmert, Jr., was adjudged guilty of the commission of a lewd and lascivious act upon the body of a child, a felony under AS 11.15.134.[1] Demmert appeals, asserting three separate claims of error. Specifically, Demmert contends:

1. That there was insufficient evidence to support the trial court's finding that he acted with the specific intent required by AS 11.15.134;

2. That the evidence produced at trial was insufficient to support the conclusion that he had committed a "lewd and lascivious act"; and

3. That the trial court erred in admitting evidence that he had committed a similar act in 1968, for which he was never convicted.

---

1. AS 11.15.134 provides:

   *Lewd or lascivious acts toward children.*

   (a) A person who commits a lewd or lascivious act, including an act constituting another crime, upon or with the body of a child under 16 years of age, intending to arouse, appeal to, or gratify his lust, passions, or sexual desires, or the lust, passions, or sexual desires of the child is punishable by imprisonment for not more than 10 years nor less than one year.

   (b) No court may suspend the sentence of a person convicted of violating (a) of this section until the court obtains a report from a reputable psychiatrist stating the mental condition of the person. No paroling authority may parole a person convicted of violating (a) of this section until the paroling authority receives a report from a reputable psychiatrist stating the mental condition of the person and stating that the person was under observation while confined in prison.

Demmert's first two assertions of error are without merit and unworthy of further comment. As to the third, we hold that there was no error.

The events leading to Demmert's conviction took place on June 22, 1975, aboard a fishing vessel, at Petersburg, Alaska. The victim, an eleven year old boy, was invited aboard the vessel by Demmert, then taken to a bunk in the fo'c'sle, where the lewd and lascivious act was performed.

During the course of his trial, Demmert testified that he had no recollection of the incident. He further testified, on cross-examination by the district attorney, that he would be surprised if he had committed the act charged, stating: "I would never do anything like that." Thereupon, the following exchange occurred: [2]

Q. You'd never do anything like that?

A. I would never do anything like that.

Q. And you have never done anything like that before?

A. Well, I have before.

Over the objection of Demmert's attorney, evidence was then adduced showing that a similar incident had occurred in 1968. On further cross-examination, Demmert testified as follows:

Q. You have done this in the past?

A. Yes.

Q. All right. When we say 'this,' we are talking about taking a child aboard the boat and having him go down in the bunk?

A. Yes.

Q. All right. And that's the same thing that happened with the child back in 1968; is that correct?

A. Yes.

Q. And on that case, did you remember?

A. Yes, I remembered.

Q. You remembered doing it in that case, right?

A. Yes.

Q. And what happened as a result of that incident—to you?

A. Well, I was incarcerated. The police picked me up at the apart . . .

THE COURT: I'm sorry—I couldn't hear that.

A. The police picked me up at the apartment where I was staying at the time . . .

Q. Um-hum.

A. . . . and charg—charged me with it, and I made a statement.

THE COURT: I'm sorry, I can't understand the . . . .

A. They charged me with a lewd and la—lascivious act, and I made a statement to that effect. And I was arraigned in Wrangell, and they—from Wrangell they shipped me up to Juneau.

Q. All right. Did you spend any time in the Alaska Psychiatric Institute?

A. Yes, I did.

Q. And how long?

A. From March till September.

Q. From March of 1968 through September of 1968?

A. Yes.

Q. Then, Mr. Demmert, why did you indicate you'd be surprised if you fou—if this was true?

A. Well, I told myself I'd never do that again.

■ Demmert argues that it was error to admit such evidence. We disagree. The main issue at trial was whether Demmert committed the act complained of with the intent to "arouse, appeal to, or gratify his lust, passions, or sexual desires," so that he possessed the specific intent required by AS 11.15.134. The theory of the defense was that he was incapable of forming such intent by virtue of alcohol intoxication.[3]

---

2. Trial Transcript 97–99.

3. AS 11.70.030 provides:

    *Intoxication as defense.* (a) An act committed by a person while in a state of voluntary intoxication is not less criminal because he was intoxicated. However, when the existence of a particular motive, purpose, or intent is a necessary element to constitute a particular species, or degree of crime, the jury may take into consideration the fact that the defendant was intoxicated at the

■ Generally, evidence of prior misconduct is inadmissible against an accused, but there are exceptions to the general rule. As stated in *Watson v. State,* 387 P.2d 289 (Alaska 1963):

> Evidence that reveals the commission of an offense other than that for which the defendant is being tried is inadmissible if it is relevant merely to show criminal disposition. But such evidence is admissible, even when it shows the defendant's prior trouble with the law, when it is relevant to prove some other material fact.[4]

We have applied this rule on a number of occasions [5] and in *Freeman v. State,* 486 P.2d 967 (Alaska 1971), dealt specifically with an exception applicable to the instant case, saying:

> One of the most familiar instances in which evidence revealing the commission of another offense has been held admissible is when that evidence is relevant and necessary to show that the crime with which the accused is charged was committed with the requisite element of intent.
>
> It is normally required that in order to be admissible on the issue of intent the prior misconduct of the accused must be similar to the crime charged and not too remote in time. Additionally, the intent of the accused must actually be in issue.[6]

Thus, in *Freeman* we held that it was error to admit proof of a prior sex offense where: (1) the prior offense was committed almost twenty years before; (2) the nature of the prior offense substantially differed from the offenses charged; and (3) the fact that specific proof of the defendant's intent was not vital to the state's case, where it was clear from the defendant's testimony,

prior to cross-examination, that he would not base his defense upon the innocence of his intent.

With these principles in mind, we turn to the case at bar.

■ There is no question concerning the similarity between Demmert's prior misconduct and the act with which he was charged. In both cases, a young boy was taken aboard Demmert's vessel and down to his bunk, where Demmert committed a lewd act upon the body of the child. Nor is there any question that Demmert's intent was the central issue in the case leading to his conviction; his whole defense centered around a contention that he was too intoxicated to form the specific intent required by AS 11.15.134. Thus, two of the three requirements established in *Freeman,* for the admissibility of the evidence of prior misconduct, were clearly met. The only troublesome issue is whether the act committed in 1968 was too remote in time.[7]

In *Freeman* the defendant was charged, among other things, with three counts of contributing to the delinquency of a minor. The contributing charges concerned young playmates of Freeman's step-daughter whom he had allegedly attempted to kiss, fondle or indecently hold. The evidence of prior misconduct introduced by the state consisted of a conviction in the State of Washington for the crime of "contributing to the delinquency of a minor, or indecent liberties." On that charge Freeman entered a plea of guilty and received a sentence of 30 days suspended with an order that he pay $2.50 for costs.

The record in the earlier case showed that when Freeman was eighteen years old, while giving a fourteen year old girl a ride home from church, he pulled his vehicle to

time in determining the purpose, motive, or intent with which he committed the act.

(b) As used in this section, 'intoxication' refers to intoxication from the use of a drug in violation of AS 17.10 or 17.12 as well as to intoxication from alcohol.

**4.** 387 P.2d at 293 (footnote omitted).

**5.** *See, e.g., Nicholi v. State,* 451 P.2d 351 (Alaska 1969); *Gafford v. State,* 440 P.2d 405 (Alas-

ka 1968); *Kugzruk v. State,* 436 P.2d 962 (Alaska 1968).

**6.** 486 P.2d at 977 (footnotes omitted).

**7.** The absence of a conviction for the prior incident is not critical to our decision in this case, in view of Demmert's admission that he committed a lewd act on that occasion. *Cf. Hixon v. State,* 508 P.2d 526 (Alaska 1973).

**158**

the side of the road where he asked if the girl "would give [him] a little" and then made several lewd advances which she resisted. Failing in his efforts, Freeman drove the girl home. Concerning that evidence, we said:

> We are of the view that in this case the detailed proof of Freeman's 1948 conviction falls far short of meeting the requirements for admissibility on the issue of intent. It must be noted that the relevance of this evidence was, at best, questionable. The subject of the state's inquiry was an offense committed in 1948, almost twenty years prior to the offenses charged against Freeman. Freeman was apparently not represented by counsel at the time of his prior conviction. Moreover, the nature of Freeman's prior offense substantially differed from the offenses charged. As evidenced by the relatively light sentence given to Freeman in 1948, a distinction can be made between the case where an 18 year old boy makes indecent advances toward a 14 year old girl in his car, and the case where a 38 year old married man makes such advances toward the young playmates of his daughter in his own home.[8]

The facts in the instant case are quite different. Demmert was nearly twenty-nine at the time of his prior misconduct. The act leading to his conviction occurred when he was thirty-six. Thus, both incidents involved lewd acts performed with young boys, by a fully mature adult. Also, both acts were committed in a similar manner, under almost identical circumstances. Given these considerations, we are of the opinion that the passage of time did little to lessen the probative value of the evidence complained of.

In *Freeman* we observed that:

> Ultimately, the admissibility of evidence of prior crimes must be governed by balancing its probative value on a given issue against the potential for prejudice which it creates. . . .[9]

In light of the record in this case, we hold that the probative value of the evidence of prior misconduct, on the issue of specific intent, outweighed its potential for prejudice.

AFFIRMED.

RABINOWITZ, J., not participating.

BOOCHEVER, C. J., with whom DIMOND, J. Pro Tem., joins, concurring.

I believe that the state's inquiry as to the similar 1968 incident was also permissible for impeachment purposes. With reference to the incident of June 22, 1975 for which he was being tried, Mr. Demmert was questioned by the District Attorney as follows:

Q All right. But—you don't know . . . you don't know of any particular reason why he would make this up or lie about this, do you?

A No, I don't.

Q All right. Would you be surprised if it were true?

A I probably would.

Q And why would you be surprised?

A Well, I'd never do anything like that.

The statement by Mr. Demmert that "I'd never do anything like that" was made as a denial of the acts for which he was accused. It is reasonable to infer from this language that Demmert was indicating he would not do such an act in the future and that he had never done any such act in the past. It was therefore permissible for the District Attorney to impeach on the question of whether he had done such an act in the past to refute the implications of Demmert's own statements.

---

8. 486 P.2d at 978–79 (footnote omitted).

9. 486 P.2d at 979.