James Rodney ADKINSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 3506.

Supreme Court of Alaska.

May 9, 1980.

A. Lee Petersen, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

James Adkinson was charged in a two-count indictment with the offenses of manslaughter under AS 11.15.040 [1] and negli-

gent homicide under AS 11.15.080.[2] Both charges arose from an incident which occurred on October 10, 1976, when Steven Butts, his brother, David, and a friend, Jim Leonard, were returning to their truck after an overnight camping trip along the Knik River. They had cut across Adkinson's land, and as they approached his cabin, Adkinson, armed with a shotgun, walked out to meet them. He told them that they were trespassing on his land, and that he wanted them to turn around. After a brief verbal exchange between Steven Butts and Adkinson, Adkinson's gun discharged, striking Butts at close range and killing him.

Adkinson was tried before a jury, which returned verdicts of guilty of manslaughter and not guilty of negligent homicide. The court sentenced Adkinson to ten years imprisonment with the possibility of parole left to the discretion of the parole authorities.

On appeal, Adkinson raises five issues:

(1) Did the trial court err in admitting evidence of prior similar acts?

(2) Did the trial court err in admitting evidence regarding the boundaries to Adkinson's homestead?

(3) Was there destruction of possibly exculpatory evidence by the investigating officer which violated Adkinson's right to due process?

(4) Did the trial court err in refusing to grant Adkinson's motion for a new trial?

(5) Was the sentence imposed on Adkinson excessive?

We find the trial court did not err on any of these issues and affirm the conviction.

## I

## EVIDENCE OF PRIOR SIMILAR ACTS

At trial, prosecution and defense witnesses offered differing accounts of how the

---

1. AS 11.15.040 provides:

Except as provided in §§ 10–30 of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

2. AS 11.15.080 provides:

Every killing of a human being by the culpable negligence of another, when the killing is not murder in the first or second degree, or is not justifiable or excusable, is manslaughter, and is punishable accordingly.

shooting occurred. Butts' two companions testified that Adkinson was upset as he approached them, and that although they were conciliatory, Adkinson was belligerent, waving his shotgun around, and eventually, when he was within inches of Steven Butts, pointing the gun directly at him moments before it discharged. Adkinson took the stand in his own defense and denied pointing his gun at Butts. Both Adkinson and his wife testified that the weapon was pointed to the side of Butts. Adkinson testified that Butts was agitated, "building himself up into a frenzy," and attempted to grab the weapon from Adkinson's hands, thereby pulling it towards himself when it discharged.

The Adkinsons also testified that Adkinson was very careful in the use of weapons, would never point a gun at another person, and had never done so. On rebuttal, the prosecution offered the testimony of two witnesses who described two separate incidents when Adkinson pointed a gun at suspected trespassers on his land. Adkinson objected to the admission of this evidence on grounds of irrelevance and prejudice, but the trial court ruled against him.

Adkinson's first claim on appeal is that the admission of evidence of purported prior similar acts towards trespassers was error because it was character evidence, which is prohibited by Alaska Rule of Evidence 404(b)[3] except in certain specific cases which do not apply here. He contends that the introduction of the evidence was for the purpose of portraying him as a person with a predisposition to commit this sort of crime.

It is beyond dispute that where evidence of other crimes or acts is relevant only to prove one's character, to show that on the occasion in question he acted in conformity with that character, it is not admissible.[4] This is because of the unfair impact such evidence tends to have. It may give rise to a persuasive inference that the defendant is guilty of the crime charged because he is a bad person. When this occurs, the defendant has been effectively denied his right to defend against the particular crime with which he is charged.[5]

However, it is equally well-established that where the evidence of prior crimes or acts is relevant to a material fact in the case at trial, it does not fall within the prohibition.[6] This court has admitted evidence of other crimes, wrongs, or acts where it has been offered to prove motive,[7] intent,[8] identity[9] or has "set the stage" for the crime being tried.[10]

The danger is enhanced where the other acts also constitute criminal offenses for which the defendant was not charged, for then he may be convicted because of those offenses rather than because he is guilty of the one with which he is charged.

3. Alaska R.Evid. 404(b) provides:

*Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

4. Alaska R.Evid. 404(b). *See also, Oksoktaruk v. State,* 611 P.2d 521 (Alaska 1980); *Freeman v. State,* 486 P.2d 967, 975–76 (Alaska 1971); *Watson v. State,* 387 P.2d 289, 293 (Alaska 1963); C. McCormick, Law of Evidence § 190, at 447 (2d ed. 1972); 1 Wigmore on Evidence § 193, at 643 (3d ed. 1940); 1 C. Torcia, Wharton's Criminal Evidence § 240, at 528, 531 (13th ed. 1972).

5. *See Michaelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–219, 93 L.Ed. 168, 173–74 (1948); *Oksoktaruk v. State,* 611 P.2d 521, (Alaska 1980); *Freeman v. State,* 486 P.2d 967 (Alaska 1971).

6. Alaska R.Evid. 404(b); *Frink v. State,* 597 P.2d 154, 169 (Alaska 1979); *Eubanks v. State,* 516 P.2d 726, 729 (Alaska 1973).

7. *See Frink v. State,* 597 P.2d at 170; *Gafford v. State,* 440 P.2d 405, 408 (Alaska 1968), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969).

8. *See Demmert v. State,* 565 P.2d 155, 157 (Alaska 1977).

9. *See Thessen v. State,* 454 P.2d 341, 353 (Alaska 1969), *cert. denied,* 396 U.S. 1029, 90 S.Ct. 588, 24 L.Ed.2d 525 (1970).

10. *See Braham v. State,* 571 P.2d 631, 640 (Alaska 1977), *cert. denied,* 436 U.S. 910, 98

■ In this case, the prosecution called two witnesses. The first was Tommy Banks, a surveyor who testified that he and an associate had gone out to Adkinson's homestead to survey the land. Adkinson appeared at their rear, and asked them what they wanted. Banks turned around to see Adkinson armed with an upraised shotgun pointed at him, which was lowered after Banks explained his presence. The second witness was William Blessington, who was crossing Adkinson's land with a man and his young son on their way to the river when they met Adkinson about seventy yards away. Adkinson had a shotgun which he discharged above their heads, and as he approached them, he shouted at them to get off his land. When Blessington's companion asked if they could cross his land to reach the river, Adkinson brought his shotgun to within a foot of the companion's face, pointing it at him, and demanded that they leave immediately.

■ The trial judge ruled that this evidence regarding prior confrontations between Adkinson and trespassers was relevant to show that Adkinson's pointing of his shotgun at Butts was not accidental or inadvertent.[11] We agree with this determination. Here, unlike the situation presented in *Oksoktaruk v. State*, 611 P.2d 521, (Alaska 1980) and *Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973), Adkinson's pri-

or acts are "so related to the crime charged in point of time or circumstances that evidence thereof is significantly useful in showing the defendant's intent in connection with the crime charged."[12] However, this does not end the inquiry. As we stated in *Eubanks v. State*, 516 P.2d 726, 729 (Alaska 1973), "[e]ven when such evidence is relevant, the probative value must outweigh its prejudicial impact."[13] This is a question which is left to the trial court's discretion, and reversal is required only where it is found that the trial court has abused that discretion.[14]

It cannot be denied that the testimony by Banks and Blessington was highly damaging to the defense. The evidence was probative of a material fact in this case, i. e., whether Adkinson intentionally pointed his gun at Butts. The testimony itself was clear and convincing. It rendered Adkinson's version of the incident much less believeable in a case which largely turned upon his credibility and that of the other witnesses. While there is always a danger of jury misuse of this sort of evidence, in this case the evidence was not of the type to arouse the jury to "overmastering hostility."[15] We cannot find that the trial court abused its discretion in admitting the evidence.

■ The defense contends that even if the evidence was admissible, the trial court erred in failing to give a limiting instruc-

S.Ct. 2246, 56 L.Ed.2d 410 (1978); *Dulier v. State*, 511 P.2d 1058, 1061 (Alaska 1973).

**11.** Alaska R.Evid. 404(b) states that evidence of other crimes, wrongs, or acts may be admissible to prove, *inter alia*, "absence of mistake or accident." Adkinson's defense that he did not point the gun at Butts, but rather Butts pulled the gun towards himself essentially is a claim that the gun came to be pointed at Butts by accident, rather than intentionally. *See also*, McCormick, note 4 *supra*, § 190 at 450; 22 C. Wright & K. Graham, Federal Practice & Procedure § 5247, at 517 (1978); 2 Wigmore note 4 *supra* § 302, at 196.

**12.** *Oksoktaruk v. State,* 611 P.2d 521, (Alaska 1980) *quoting* 1 C. Torcia, Wharton's Criminal Evidence § 245, at 556 (13th ed. 1972).

**13.** (Citations omitted). Alaska R.Evid. 403 provides in part:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice . . ..

**14.** *Ladd v. State*, 568 P.2d 960, 968 (Alaska 1977), *cert. denied*, 435 U.S. 928, 98 S.Ct. 1498, 55 L.Ed.2d 524 (1978).

**15.** *See* McCormick, note 4 *supra*, § 190 at 453. *See also* Commentary, Alaska R.Evid. 403, at 62 (1979), which suggests that "unfair prejudice" in this context, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."

tion regarding its proper use to the jury. There is no merit to this claim. Absent a finding of plain error,[16] which Adkinson does not urge, appellant's failure to request a limiting instruction at trial waived that claim.[17]

## II

### EVIDENCE OF ADKINSON'S HOMESTEAD BOUNDARIES

■ Extensive testimony was presented at trial concerning the formal boundaries of Adkinson's homestead. The state's theory in introducing this evidence was that the boundaries were questionable, Adkinson was aware of this, and thus also aware that perhaps Butts and his companions were not in fact trespassers on his property. The thrust of such a conclusion would purportedly be to call into question the reasonableness of Adkinson's reaction to the victim's presence, which would be relevant to the negligent homicide count.

Adkinson contends that the evidence was irrelevant and highly prejudicial, serving primarily to portray the defendant as "a greedy and vexatious person who acted in bad faith."

Although we have difficulty understanding the relevance of this evidence, and it is unfortunate that so much time at trial was consumed in the dispute over the homestead boundaries, we do not believe that it had an appreciable effect on the jury's verdict. The jury found Adkinson not guilty

of Count II, negligent homicide, and guilty of Count I, manslaughter, which required a finding that Adkinson pointed his gun at Butts, an act that was unlawful under the circumstances regardless of whether Butts was a trespasser. Therefore, any error with regard to the admission of the homestead boundaries evidence would be harmless.[18]

## III

### DESTRUCTION OF POSSIBLY EXCULPATORY EVIDENCE

■ State Trooper Gary Lewis, one of the first officers to arrive at the scene of the shooting, took possession of Adkinson's shotgun. At trial, he testified that he handled the weapon before it was sent for analysis to a fingerprint expert, John Sauve. Upon examination of the gun, Sauve found only Trooper Lewis' prints, near the end of the barrel.

Adkinson contends that Trooper Lewis' handling of the shotgun destroyed any fingerprints that might have been on the gun. Since it is the central claim of his defense that Butts grabbed the gun and pulled it towards himself before it discharged, Adkinson contends that the presence of Butts' fingerprints on the gun was "absolutely crucial to the question of his guilt or innocence," and that the state's alleged destruction of this exculpatory evidence denied him due process of law.[19]

---

16. Alaska R.Crim.P. 47(b).

17. Alaska R.Evid. 105 provides in part:
    When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request*, shall restrict the evidence to its proper scope and instruct the jury accordingly. [Emphasis added].
    *See also, Frink v. State,* 597 P.2d at 170.

18. *See* Alaska R. Crim.P. 47(a); *Love v. State,* 457 P.2d 622, 631 (Alaska 1969).

19. U.S.Const.Amend. V; Alaska Const. art. I, § 7.
    Adkinson also claims that the state's failure to preserve the backpacks worn by Butts and his two companions also denied him due proc-

ess, for the backpacks' contents may have contained weapons or other evidence that would have affected the boys' credibility at trial. Additionally, he claims that the size of Butts' pack was pertinent to the witnesses' ability to observe the incident. We find no merit to these arguments. Butts' pack *was* produced at trial for the jury to examine, and we cannot see that the contents of the pack were relevant to any of the disputed issues. What we said in *Nicholson v. State,* 570 P.2d 1058 (Alaska 1977) is pertinent here:
    Adoption of appellant's views would impose an extremely difficult burden on the state to preserve intact almost every physical detail of a crime scene. Here the investigators of the homicide had no indication of the relevance of either the tire or the furnace at the pertinent times during their investigation. Nor is there

We do not agree. Although Lewis admitted handling the barrel of the gun while taking it out of his car at the police station, the evidence was conflicting as to whether he had otherwise touched the barrel. He denied doing so.

Moreover, while the presence of Butts' fingerprints on the shotgun barrel would have corroborated Adkinson's version of the shooting in part, it would not have been exculpatory in itself. Even if Butts had grabbed the shotgun, if it had been pointed at him, Adkinson would have been guilty of manslaughter, and the presence of Butts' prints would not prove that Adkinson *did not* point his weapon at Butts.

Finally, any mishandling on the part of the police was unintentional. Trooper Lewis testified that he didn't think to preserve the gun for fingerprints until after he had brought the gun to the police station and dismantled it. Under these circumstances, we do not find a failure of due process.[20]

## IV

## DENIAL OF MOTION FOR A NEW TRIAL

■ Pursuant to Alaska Rule of Criminal Procedure 33 [21] Adkinson moved for a new trial after the verdict was reached, on the ground that the admission of defendant's prior similar acts deprived him of a fair trial. The trial court denied the motion. After Adkinson was sentenced, the defense renewed the motion, this time predicated on allegedly newly discovered evidence, which consisted of the reports of a polygraph expert and a voice stress analysis expert which purported to show that the Adkinsons had truthfully testified at trial. The trial court denied this motion on the ground that the reports were not newly discovered evidence within the meaning of Alaska Rule of Criminal Procedure 33, citing *Rank v. State*, 382 P.2d 760, 761 (Alaska 1963). The trial court also denied Adkinson's motion as not required in the interests of justice. We find no error.

Our resolution above of the prior similar acts issue disposes of appellant's first argument. In *Rank* we enumerated the requirements that a motion for a new trial based on newly discovered evidence must meet:

(1) It must appear from the motion that the evidence relied on is, in fact, newly discovered, i. e., discovered after the trial; (2) the motion must allege facts from which the court may infer diligence on the part of the movant; (3) the evidence relied on must not be merely cumulative or impeaching; (4) must be material to the issues involved; and (5) must be such as, on a new trial, would probably produce an acquittal.

382 P.2d at 761.[22] The trial court denied the motion because defendant waited until after the jury had returned its verdict before conducting the evaluations, presumably concluding that the second requirement was not met. Defense counsel explained that he had not sought the evaluations sooner because he had not realized the critical role that would be assigned to his client's credibility, and because he feared that his own performance as counsel would be impaired by adverse test results.

any indication that the failure to preserve these items was other than a result of a good faith determination during the course of a crime investigation. 570 P.2d at 1064.

**20.** *See Catlett v. State*, 585 P.2d 553, 557–58 (Alaska 1978); *White v. State*, 577 P.2d 1056, 1060 (Alaska 1978); *Nicholson v. State*, 570 P.2d at 1064; *Torres v. State*, 519 P.2d 788, 796–97 (Alaska 1974).

**21.** Alaska R. Crim. P. 33 provides:

The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 5 days after verdict or finding of guilt, or within such further time as the court may fix during the 5-day period.

**22.** *Quoting Salinas v. State*, 373 P.2d 512, 514 (Alaska 1962).

■ A motion for a new trial based on a claim of newly discovered evidence falls within the sound discretion of the trial judge and will only be disturbed on appeal if there is an abuse of discretion. *Johnson v. State*, 501 P.2d 762, 765 (Alaska 1972).[23] We conclude that the trial judge's decision was not an abuse of discretion.[24]

## V

### SENTENCE

■ The trial court sentenced Adkinson to ten years imprisonment with the possibility of parole left to the discretion of the parole board. Adkinson's final point on appeal is that this sentence is excessive.

In imposing sentence, the trial court concluded that a severe sanction would be necessary to give effect to the goals of criminal sanctions as articulated in *State v. Chaney*, 477 P.2d 441 (Alaska 1970). We have examined the sentencing proceedings and we believe that the trial judge gave thoughtful consideration to the facts of this case and the *Chaney* sentencing criteria. We conclude that in imposing the sentence it did, the trial court was not clearly mistaken.

AFFIRMED.

RABINOWITZ, Chief Justice, concurring, joined by BOOCHEVER, Justice.

I concur in the court's resolution of the evidence of prior similar acts issue, but believe that the questioned evidence was also properly admissible for impeachment purposes.[1]

This court has expressed previously in dicta its approval of prosecutorial use of evidence which contradicts an accused's testimony. In *Freeman v. State*, 486 P.2d 967 (Alaska 1971), a case involving the admissibility of an accused's prior conviction, we acknowledged in a footnote that although the defendant may not be found to have opened the door to past acts of misconduct by putting his character in issue,

> An altogether different situation arises where the accused, instead of generally contending that his character is inconsistent with the type of offense with which he is charged, affirmatively denies ever having been in trouble, or makes specific claims as to his conduct on certain occasions in the past. In such cases, evidence of misconduct by the accused has frequently been held admissible in order to directly contradict the specific claims of the accused. *See, e. g., United States v. Bowe*, 360 F.2d 1 (2d Cir. 1966); *United States v. Beno*, 324 F.2d 582, 588 (2d Cir. 1963); *People v. Goff*, 100 Cal.App.2d 166, 223 P.2d 27, 30 (1950); *Molton v. People*, 118 Colo. 147, 193 P.2d 271, 272–273 (1948); *Folds v. State*, 90 Ga.App. 849, 84 S.E.2d 584 (1954); *State v. Hale*, 21 Ohio App.2d 207, 256 N.E.2d 239 (1969); *State v. Fiddler*, 57 Wash.2d 815, 360 P.2d 155, 158 (1961).[2]

*Id.* at 976 n.23.

Once Adkinson took the stand and testified on direct examination[3] that he would

**23.** *See also Darling v. State*, 520 P.2d 793, 795 (Alaska 1974); *Ladd v. State*, 568 P.2d at 970.

**24.** We need not reach the question of the admissibility of the polygraph and psychological stress evaluations at trial. *See generally, Pulakis v. State*, 476 P.2d 474, 479 (Alaska 1970).

**1.** Louisell and Mueller, 3 Federal Evidence § 343 (1979); McCormick, Handbook of the Law of Evidence § 47 (2d ed. 1972).

**2.** In *Demmert v. State*, 565 P.2d 155 (Alaska 1977), then Chief Justice Boochever remarked in a concurring opinion, joined by Justice Dimond, that the introduction of a prior similar act was permissible to impeach the defendant's testimony that he had never committed such an act before.

> The statement by Mr. Demmert that 'I'd never do anything like that' was made as a denial of the acts for which he was accused. It is reasonable to infer from this language that Demmert was indicating he would not do such an act in the future and that he had never done any such act in the past. It was therefore permissible for the District Attorney to impeach on the question of whether he had done such an act in the past to refute the implications of Demmert's own statements.
> *Id.* at 158.

**3.** Since I am assuming arguendo that this evidence does not come in under the "lack of accident and mistake" exception of Alaska R.Evid. 404(b), the general rule excluding prior

never point a gun at another person, the state could rebut that evidence as it did by offering the testimony of two witnesses who described two separate incidents in which Adkinson had pointed a gun at people. Such evidence was far from collateral.[4]

Adkinson's credibility was central to the case—as in many cases when the accused takes the stand. Were the jury to retire with the impression that Adkinson had never pointed a gun at another person, the prosecution's case would have been substantially weakened. Such a denial going to a crucial element of the crime is of sufficient importance to allow rebuttal.

Thus, I conclude impeachment is a sufficient independent basis to support introduction of this evidence.

---

bad acts applies. In that circumstance, the evidence must have been brought out on direct examination to allow impeachment by contradiction.

> [W]ith respect to evidence excludable under some specific provision in the Rules of Evidence, or some statutory or constitutional principle, a denial by the witness paves the way for contradiction through the use of such evidence only if the denial came out on direct examination of the witness. If it were otherwise, if excludable evidence were allowed to contradict the denial of a witness on cross-examination, the result would be to reduce the rule of exclusion to a hollow shell: Either the witness would concede the point on cross-examination, in which case the excludable evidence would be effectively before the trier of fact, or he would deny the point on cross-examination, in which case too the excludable evidence would be received, this time to contradict. While the purpose would still be limited, at least in the latter instance, the party for whose benefit the exclusionary rule was designed would altogether lose the power to claim most of its protection.

Louisell and Mueller, 3 Federal Evidence § 343, at 500–01 (1979).

4. The only limit placed on impeachment by contradiction is that the subject of the impeachment not be collateral. McCormick, Handbook of the Law of Evidence § 47 (2d ed. 1972); Lempert and Saltzburg, A Modern Approach to Evidence 312 (1977).